The State v. George.

---

THE STATE *v.* GEORGE.

The Court of Errors and Appeals has jurisdiction of questions arising out of criminal prosecutions under the provisions of the statutes of 7 June, 1806, known as the Black Code. Stat. 6 April, 1843, s. 5.

Slaves charged with capital offences are entitled to be tried by an impartial jury. They have no right to challenge a juror peremptorily; but their right to challenge for cause is the same as that of free persons.

To disqualify a juror on the ground of his having formed an opinion as to the guilt of the accused, his opinion must have been deliberately formed. Light impressions, which may be fairly supposed to yield to the testimony that may be offered, and which leave the mind open to a fair consideration of it, are no sufficient objection to a juror; but those strong and deep impressions which will close the

mind against the testimony that may be offered in opposition to them, and which will combat and resist its force, constitute a sufficient objection.

Where the extent of the punishment of an offence is left to the discretion of the jury, the fact that one offered as a juror has made up his mind as to the measure of punishment which should be awarded to the accused in case of conviction, is a sufficient cause to reject him.

The statutes of 7 June, 1806, (s. 1,) and of 19 February, 1825, (s. 1,) which prescribe the mode of trial of slaves charged with capital offences, requiring that the judge and freeholders shall be of the parish in which the offence was committed, the venue constitutes, in such prosecutions, as in other ordinary criminal prosecutions, a substantive charge, and it must be specially proved.

Where one charged with a criminal offence is described as a slave, and, with the assistance of his owner, submits, without objection, to be tried as such, it is such an admission of his condition, as will prevent him from requiring the judge to charge the jury that the fact of his being a slave should be proved to warrant a verdict of guilty. *Per Curiam :* It was such an admission of his condition as he could not contradict at that stage of the prosecution. He should have made the issue before going to trial on the merits, or have availed himself of it after verdict.

Where on the trial of a slave charged with a capital offence, the parish judge remained with the jury, after they had retired to deliberate on their verdict, in order to read to them the testimony, which he had reduced to writing so illegibly that they were unable to decipher it, but afterwards withdrew, and subsequently returned, at their request, and wrote out their verdict, these acts, though irregular, will not vitiate a verdict, where it does not appear that the judge availed himself of his presence among the jury to participate in their proceedings. *Per Curiam :* The jury should have been brought into court, and the testimony read to them there ; and, when prepared to render their verdict, if unable to write it themselves, it should have been written in open court, by the clerk or judge, under their direction.

New trials may be granted in criminal prosecutions ; and where a new trial has been improperly refused by the court of the first instance, it will be ordered by the Court of Errors and Appeals.

APPEAL from the Parish Court of Tensas, *Montgomery,* J.

*Preston,* Attorney General, for the State.

*Farrar* and *Shaw,* for the appellant.

KING, J.    The accused, who is the slave of.Lewis Covington, has been charged with wilfully and maliciously striking Collinsworth, the overseer of his owner, causing a contusion and shedding of blood. Upon this accusation he was tried by the parish judge and six freeholders of the parish of Tensas, where the crime is alleged to have been committed, convicted and sentenced to suffer death. Covington, the owner of the slave, has appealed from this judgment, asking that it be reversed, and the case remanded for a new trial, for the several reasons stated in bills of exceptions taken to the rulings of the judge, during the progress of the prosecution.

Before proceeding, however, to the consideration of the several grounds of alleged error, it becomes necessary to dispose of the doubt expressed, whether this court would take jurisdiction of questions arising upon prosecutions under the enactments of the Black Code. This doubt is removed by reference to the

5th section of the act creating this tribunal, which provides, "that said court shall have jurisdiction of all questions of law arising in the progress of *any prosecution* for the violation of *any penal law of the State, where the punishment may be death or imprisonment at hard labor.*" Acts of 1843, p. 60. No distinction of persons is made in the act.

The first ground of complaint is, that the court erred in refusing to permit the defendant to challenge a juror, "who had formed his opinion as to the guilt of the accused, upon vague rumor;" and had stated further, "that his mind was made up as to the punishment which should be inflicted upon the prisoner, in the event of conviction."

The several acts prescribing the manner of convoking and forming juries for the trial of slaves charged with the commission of crimes which may subject them to capital punishment, undoubtedly refuse to this class of persons the right to peremptory challenges. They are nevertheless entitled to a trial by an impartial jury ; and, in order to attain that end, their right of challenging for cause in many respects, cannot differ materially, if at all, from those of free persons. In the case under consideration, the objections to the juror must be tested by the rules which prevail in ordinary prosecutions.

Under our system, which permits no change of venue, it frequently becomes difficult, when a crime, from its enormity, or from circumstances accompanying its commission, grows into notoriety, to find men within the parish in which it was committed, who have not formed some vague opinion, favorable or unfavorble to the accused. However desirable it may be to procure jurors whose minds are prepared to receive their impressions alone from the testimony submitted to them, yet the experience of almost every term of a district court held in the country parishes, teaches, that this is often impracticable. The ends of justice require, that such offenders should be brought to punishment, and they will not be permitted to shield themselves from the consequences of their crimes by perpetrating acts of such heinousness as to excite universal inquiry, which inquiry leads to the formation of an opinion. Yet such would be the result, if jurors were rejected merely because, from vague and floating rumors, they had formed some indefinite opinion, which, upon inquiry, often proves to be merely hypothetical. To disqualify the juror, his opinion should have been *deliberately formed*, as is commonly the case, where he has heard the evidence before the examining justice or upon a former trial of the same cause, or has heard the statements of the principal witnesses. These become proper subjects of inquiry when the juror is presented to the prisoner. Much must necessarily be left to the judgment of the tri-

ors or judge, as the case may be, in ascertaining whether the mind of the juror be open to receive impressions from the evidence, or whether his opinions have been so deliberately formed as to resist those impressions. On the trial of Aaron Burr, when the same question arose, Chief Justice Marshall said ; " Were it possible to obtain a jury, without any prepossessions whatever respecting the guilt or innocence of the accused, it would be extremely desirable to obtain such a jury ; but this is perhaps impossible, and therefore will not be required. The opinion which has been avowed by the court, is, that light impressions which may be fairly supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror ; but that those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him. Those who try the impartiality of a juror, ought to test him by this rule." Burr's Trial, p. 416.

With the rule here established as our guide, we are not prepared to say, that the judge erred in overruling the first objection to the juror, as it does not appear from the bill of exceptions that he was interrogated further, or made any other statement from which we might infer that he had formed a deliberate opinion, in relation to the guilt or innocence of the accused.

The second objection to the juror was well taken. His mind was " made up," as to the measure of punishment which should be awarded to the accused in the event of his conviction. The act of 1814, annexes the penalty of death to the crime with which the defendant is charged ; and a conviction under it, previously to the passage of the act of 1843, placed the punishment of the prisoner beyond the discretion or control of the judge or jury. A sentence fixed and ascertained must necessarily have followed. An opinion however fully formed, under such circumstances, with regard to the punishment which should ensue upon conviction, would have formed no valid objection to a juror ; and would only have been considered as his opinion of the law, applicable to a supposed state of facts. An important change, however, has been made in the duties which devolve upon the jury, by the statute of 1843, § 7, which enacts ; " That in all cases where capital punishment or imprisonment at hard labor for life is inflicted for any crime committed by a slave, the jury trying the same shall, in its discretion, pronounce sentence of death, imprisonment at hard labor for life, or for a shorter time in prison, or in irons in the service of his master, or order that corporal punishment be inflicted." Thus it now rests with the jury in such cases, not only to deter-

mine the guilt of the accused, but also, within prescribed limits, the punishment which shall be inflicted upon his conviction. The juror's opinion was fixed and settled upon an important branch of the case which he was called to decide, and his mind consequently closed against the various considerations which might induce a jury to mitigate their sentence. In Burr's case, jurors were rejected, who believed that he was prosecuting the treasonable design with which he was charged, at the time of the acts laid in the indictment, although they had formed no opinion as to whether he had committed those acts. Burr's Trial, 417. The case now under consideration is much stronger; and we think, the judge erred in permitting the juror to be sworn.

The second ground of alleged error is, that the judge refused to instruct the jury, that they ought to acquit the prisoner, if the prosecution failed in making proof of the venue as charged.

The acts of 1806 and 1825, prescribing the mode and form of trial of slaves for capital offences, of which the act of 1843 is amendatory, require that the judge and freeholders shall be of the parish where the offence was committed. Bul. & Curry, pp. 57, 68. A tribunal differently composed would have been without jurisdiction. A parish judge or freeholders of any other parish, would not have answered the requirements of these statutes. The venue under these acts, constitutes, as it does in ordinary criminal proceedings, a substantive charge, which must be specially proved. 1 Chitty, 177, 556.

The judge should have instructed the jury that, in order to convict the accused, they ought to be satisfied from the testimony, that the offence had been committed in the parish of Tensas, as charged, and that they were the judges of the sufficiency of the evidence adduced to establish that fact. When an acquittal occurs upon grounds of this kind, the fact should be stated in the verdict, as it would not bar a prosecution for the same offence in the proper parish.

The third bill of exceptions was taken to the refusal of the judge to charge the jury, that the slavery of the accused ought to be proved, to warrant a verdict of guilty.

The defendant having appeared, and with the aid of his owner submitted to a trial as a slave without objection, is such an admission of his condition as he could not contradict at that stage of the prosecution. He should have made the issue before going to trial upon the merits, or have availed himself of his plea after verdict.

It appears, that after the jury had retired to deliberate upon their verdict, the parish judge remained with them in order to read to them the testimony, which he had reduced to writing so illegibly, that they were unable to decipher it; after accomplishing

which he withdrew, but subsequently returned, at their request, and wrote out their verdict. These acts were certainly irregular, although they might not vitiate a verdict rendered upon a trial in other respects regular, as it does not appear that the judge availed himself of his presence among the jury to participate in the proceedings. The jury should have been brought into court, and the testimony there read to them; and when prepared to render their verdict, if unable to write it themselves, it should have been done in open court, by the clerk or judge, under their direction.

An application was made to the court below for a second trial, based upon the several grounds which have already been considered. The question has been made, whether it be competent to the courts of this State to grant second trials upon convictions for murder, or for offences termed at common law felonies; and whether this court will interfere with those of original jurisdiction, in the exercise of such a power, which, if it exist, it is contended, is entirely discretionary. It has been held in the case of the *The State* v. *Charlot, ante,* 529, that our courts of criminal jurisdiction possess this power in all cases; and that, when improperly exercised, their acts will be reviewed by this court.

It is, therefore, ordered and decreed, that the judgment of the court below, be annulled and reversed; that a new trial be granted to the slave George; and that this case be remanded, to be proceeded in according to law.