## State v. W. G. Bunger.

An opinion formed and expressed by a juror in a criminal case, which is based wholly upon rumor, and when there is no bias or prejudice in the mind of the juror, is not a disqualification.

The jurisdiction of the Supreme Court being limited to questions of law in criminal cases, it must appear clearly by a bill of exceptions to the refusal of the Judge to sustain a challenge of a juror for cause, that no question of fact but one purely of law was presented for decision.

The statutes regulating the arrest and commitment of persons accused of crimes and misdemeanors, do not require the previous examination of a prisoner before a commiting magistrate, in order to authorize the Grand Jury to inquire into the matter and find a bill of indictment.

Where the regular session of a court is adjourned over by order of the Judge at chambers, the jurors summoned for the first week of the court, are bound to attend, and serve for the first week of the actual session of the court thus adjourned over.

The accused, in a criminal case, is not entitled to service of the list of talesmen.

Where a juror can be challenged for cause, the right must be exercised before the juror is sworn, and a verdict cures the defect.

Where the jury cannot be completed by talesmen from among the bystanders, recourse may be had to other persons not within the presence of the court.

The objection was stated in the bill of exceptions to the refusal of the Judge to grant a new trial, that such talesmen were summoned during the time the court was adjourned—*Held*: That there was no error in the ruling of the court below, and that if any complaint was made by the accused against the Sheriff for want of impartiality in summoning such talesman, it was a matter of fact to be submitted to the Judge, and rested in his sound discretion.

The Judge may properly refuse to charge the jury as requested by counsel, on the ground that the charge asked for is the same in substance with that already given, with the only difference of being shaped in a manner calculated to mislead the jury.

APPEAL from the District Court of the Parish of Madison, *Farrar, J.*
   *E. W. Moïse*, Attorney General, for the State.   *T. S. Crawford*, for defendant and appellant.

VOORHIES, J. The defendant was indicted, in the year 1856, for the murder of his wife, found guilty and sentenced to death. Having appealed to the Supreme Court, in session at Munroe, he succeeded in obtaining a reversal of this judgment; and the case was remanded for a new trial. 11 An. 607.

A new indictment for the same offence was preferred against him in the District Court. He then obtained a change of venue, was tried, again found guilty, and was sentenced to death.

We will now consider the questions of law presented by the numerous bills of exception, which the prisoner has taken to the rulings of the court below:

I. There is a complaint with regard to the service of the venire; the bill of exception states, "that no list of the jury, who were to pass on his trial, had been delivered to the accused two entire days before that time."

The record does not show that this party ever complained that an informal and irregular list of jurors were ever served upon him, nor does the District Attorney, in his brief, concede this point.

The Sheriff, in his return, states, that "*he served on the prisoner a certified list of the jury for the first week of the* VENIRE FACIAS, WHO WERE LIABLE TO SERVICE AS PETIT JURORS." It is true, the same bill of exception sets up as a matter of grievance, that the District Judge admitted the introduction of parol evidence, "to prove that the list of jurors served on the accused, was made out after certain jurors had been excused." Apart from the manifest inconsistency that we find in this bill of exceptions, with regard to the fact of the service of the venire,

we must confess our inability to see the practical effect of the second objection. There would be some meaning in it, had the prisoner rested his complaint upon the ground, that the list of jurors served upon him, was not such a one as the law contemplates. As he has not done this, we must overrule this bill of exception.

II. A juror by the name of *G. W. Waugh* was challenged for cause by the accused, on the ground that he had formed and expressed an opinion as to the guilt of the accused. The objection was overruled ; but it appears that the juror did not sit on the trial of this case.

This juror, being sworn on his *voir dire*, states : That he has formed and expressed an opinion as to the guilt or innocence of the prisoner ; that he has heard a good deal said about this case, the evidence of which, however, he has not heard ; that, after hearing the evidence, he can give a fair and impartial verdict ; that he has heard the accused himself speak of the case ; that he is of opinion that the accused is guilty ; and, finally, that he has no prejudice or opinion which will prevent him from doing impartial justice after having heard the testimony.

We will not disturb this ruling of the District Judge in this instance, for several reasons. Was the opinion of the juror based wholly upon rumor ? Or wholly upon the narrative of the accused himself ? Or partly on both ? Now an opinion predicated upon rumor, when there is no bias or prejudice in the mind of the juror, is not a disqualification. On the other hand, if this opinion is based on the statement of the prisoner, the objection would seem to come more properly from the District Attorney.

The apparent hardship, in this case, consists in the fact, that the juror stated that he believed the prisoner guilty ; but then, he does not say that his opinion is based on the declarations of the prisoner, nor on rumor. And, although from his answers, one or the orther, or perhaps both of these elements, must have presided in the formation of his opinion, there was clearly presented for adjudication, a question of fact, which the inferior court alone could decide. Was that opinion based upon rumor ? Was it based on the declarations of the prisoner ? Or was it the result of both ?

This was a matter of fact, which had to be weighed ; and it is not made apparent by bill of exceptions, that in so doing, the District Judge violated any known rule of law applicable to the instance, or applied in its solution a ruling of doubtful applicability.

The jurisdiction of this court being limited to questions of law in criminal cases, it is obvious that we cannot review the action of the court below in this matter, without trespassing on the facts ; and that is another reason why the ruling of the District Judge in refusing the challenge for cause of the juror, *G. W. Waugh*, should not be disturbed. 13 An. 491.

We may add that, as this juror did not sit in the case, and as it does not appear that the defendant thereby exhausted his peremptory challenges, we are unable to perceive the nature of the injury, which claims redress at our hands.

With regard to the other jurors challenged for cause, to wit, *J. S. Bugg*, *Henry Maddox* and *B. S. Simms*, it appears that their opinion was based wholly upon rumor, and that they were open to conviction. It is true that *J. S. Bugg* stated, in answer to the question : " Would circumstantial evidence, different from what you have heard, change your opinion of the case" ? "I think not." But at the same time, he made the statement that " he could judge of this case as of a case about which he had heard nothing, and formed no opinion." The

juror evidently misapprehended the purport of the question propounded to him relative to circumstantial evidence, the nature of which was probably unfamiliar to him.

It was, however, peculiarly within the province of the court below, to determine whether the facts elicited from the juror, on his *voir dire*, were such as to warrant the conclusion that the juror was or was not open to conviction ; and, if the accused was under the impression, that in so doing, an error or mistake of law had been committed to his detriment, it was incumbent upon him to present his grievance in a tangible form. As this bill of exception does not point out the error of law complained of, (and this remark applies to the challenge for cause of the other jurors,) we are exposed, in sustaining it, to review an opinion of the District Judge, which possibly may have been the solution of a mere question of fact, conceding the law to be as stated by the defendant's counsel. Let us add that of these four jurors, the only one who sat in the case was *Henry Maddox,* who was clearly qualified to do so.

It is the duty of parties, in a criminal prosecution, to set up their grievances on appeal to this court, so that it can safely exercise its jurisdiction, without being exposed to violate the constitutional provision upon this subject. See the case of *State* v. *Brunetto,* 13 An. 45, and the authorities there quoted. See opinion of C. J. Merrick, in case of *State* v. *Henderson,* 13 An. 491.

III. The accused made a motion, in the court below, that the District Attorney be ordered to elect on which of the two indictments for the same offence, he would prosecute. No bill of exception was taken to the ruling of the District Judge, upon the rejection of this application.

Besides, the motion to elect can be exercised only with reference to the improper insertion of different counts in the same indictment. Wharton's Criminal Law, p. 190, ed. 1852.

IV. The regular pannel of jurors having been set aside, on the application of the prisoner, he cannot now be listened to, when he contends that the bill of indictment preferred against him, should have been presented by the Grand Jury thus discharged.

V. The next ground of complaint is, that the prosecution originated before the Grand Jury, without previous preliminary investigation before a committing magistrate.

The statues regulating the arrest and commitment for crimes and misdemeanors, do not require a previous examination of the prisoner, in order to authorize the Grand Jury to inquire into the matter. Indeed, the discharge of the prisoner by the committing magistrate, would never be seriously opposed as precluding the action of the Grand Jury. Besides, it is the common law practice, and a practice invariably followed in this State, and never before questioned, that prosecutions may originate in the Grand Jury. Chitty Cr. L. p. 163.

VI. The defendant's counsel urge that the reception of illegal evidence by the Grand Jury, vitiates the indictment. But it does not appear by bill of exception how the law has been violated in this respect, in the case at bar ; nor in what respect the District Judge has misconstrued or misapplied the law. We have nothing to do with the statement of facts which we find in the record, on this branch of the case.

VII. The regular session of court for the parish of Madison, having been adjourned over for two weeks by the written order of the District Judge at chambers, and the jury of the first week ordered to attend accordingly, the prisoner

STATE
v.
BUNGER

challenged the array on the ground, that their term of service had expired by law. The District Court properly overruled this objection.

The court was not in session the first and second weeks. These jurors did not serve, or even attend court during that time; and the District Judge properly held that, in contemplation of law, the first week of the actual session of court, was that during which the jurors first enlisted had to attend court and serve in that capacity.

VIII. The accused was not entitled to service of the list of talesmen ; this is not an open question. *State* v. *Reeves*, 11 An. 686.

IX. The Sheriff having summoned the talesmen out of the presence of the court, and when the court adjourned over from day to day, it is contended that the persons so summoned were not bystanders, and as such not liable to serve as jurors. The counsel states in his brief: " On this point, I am aware that the later American decisions have greatly relaxed the English common rule, but contend that Louisiana has adopted the common law of England as it stood in 1805, and that the late innovations on this well established principle of the common law, do not apply to this State."

The rule is undoubtedly as laid down by the counsel; but it is obvious, that if the jury cannot be completed by summoning bystanders, recourse may be had to other persons not within the presence of the court. The bill of exceptions does not set this matter right before the court, and we are bound to presume, in the absence of proper evidence to the contrary, that the District Judge and the officers of court, did their duty on this occasion. If the Sheriff did not act with impartiality toward the accused, as the latter complains, that was a matter of fact which ought to have been submitted to the District Judge, and which rested in his sound discretion.

X. One of the talesmen, named *S. L. Stone*, a juror in this case, was not challenged for cause, although it appears that he was not qualified to serve. The court overruled the objection filed on that ground, by the defendant, to set aside the verdict of the jury. It is well settled that, when a juror can be challenged for cause, the right must be exercised before the juror is sworn ; and that a verdict cures the defect. No distinction is made by law, in that respect, between regular jurors and talesmen. Courts of justice cannot distinguish.

XI. The last bill of exceptions refers to the charge of the court to the jury. The counsel for the defence requested a charge to the effect : " That a confession in a capital case, from the nature of the thing, is a very doubtful species of evidence, and should be received with great caution." The District Judge refused to give this charge, on the ground that he had already given these instructions to the jury in his charge, in a less objectionable form. In this respect, we agree with him in laying down the law, that " a free and voluntary confession by a person accused of a crime, is evidence against him ; and it is with the jury to attach to a confession, that weight to which it is entitled."

The District Judge having already charged, that in case the jury were satisfied of the insanity of the accused at the date of the commission of the deed, they must bring in a verdict of acquittal—had the right to decline giving the charge, asked by the prisoner's counsel on the same subject-matter. The charge demanded was the substance of the charge already given, with the only difference that the former was stated in a manner calculated to mislead the jury.

We have had occasion during the progress of this investigation, to notice that this record contains an abundance of parol and documentary evidence ; and we

take this opportunity to state, that inasmuch as the facts are not within the province of this court in criminal prosecutions, it is the duty of the Clerks of the District Court to avoid encumbering the transcripts, in such cases, with statements of facts. *See opinion of C. J. Merrick, in the case of State v. Henderson, p.* 491, 13 An., in which the following passage occurs :

" It is apparent that inasmuch as the testimony is never taken down by the Clerk in criminal cases, that the record cannot be certified, as in civil cases, to contain all the evidence. This was known to the framers of the Constitution, when they conferred the appeal, and to the Legislature also when it authorized an appeal in criminal cases without giving bond. The Articles of the Code of Practice which gives either party the right to require the Clerk to take down the testimony in civil cases and to require him to certify the same to the Supreme Court, are not applicable to appeals in criminal cases; and it seems to us as a consequence that the appeal cannot be dismissed, because the appellant did not do an impossible thing. C. P. 601, 896, 897."

It is, therefore, ordered and decreed, that the judgment of the District Court be affirmed.

MERRICK, C. J., dissenting. This case is of the greatest importance to the accused, as it involves nothing less than his life. As I differ entirely from the majority of the court on some points and concur on others, I shall proceed to consider the questions in the order in which they are presented by defendant's brief.

At the outset it is proper to remark, that I do not think I am bound to be more technical than was the Attorney General in his argument in February last, or the District Attorney in his brief. I shall consider those questions which they have considered, and I shall not deprive the accused of the benefit of the discussion of any question which the State admits to be raised by the bills of exception.

I have had sufficient experience as an advocate to know that it is not possible in the hurry of a criminal trial to draft bills of exception with a certainty which shall exclude all possible inferences, or to use the language of Lord Coke, with a certainty to a certain intent in every particular. In my opinion it is sufficient, if the bill informs the Appellate Court with reasonable certainty of the supposed error. 4 An. 505.

The District Judge very properly, in my opinion, certified the facts needed to the full explanation of the question of law raised before him. Such is the usual mode of raising questions of law, and is the mode pointed out by this court in the case of the *State* v. *Brown,* just cited. 4 An. 505.

There cannot be such a thing as a question of law pending before a *judicial tribunal* wholly disconnected with facts. The Legislature may so deal with abstract legal propositions; but courts of justice concern themselves alone in applying legal principles to facts. Without facts they have no jurisdiction. The Court of Error, however, has the facts already found by the inferior jurisdiction, either by a special verdict, a statement of facts, or bills of exceptions, or the proceedings themselves, as shown by the record. The duty of the Court of Error is then, only to consider what law is applicable to a given state of facts already ascertained by the inferior tribunal.

I discover, therefore, nothing improper in the bills of exception which have detailed the facts necessary to understand the ruling of the District Court upon such points. On the contrary, I think the bills of exception would have been

59

defective without them. The Constitution gives the accused a right of appeal on questions of law, and as a consequence the means of spreading those questions upon the record.

In 1856, the accused having been convicted of the crime of murder upon another indictment, prosecuted an appeal from the District Court for the Parish of Franklin to this court, then sitting at Monroe. The judgment of the lower court was reversed, and the case remanded for a new trial. 11 An. 607.

On the return of the case to the lower court, a new indictment was presented in the Parish of Franklin for the same offence. The venue was subsequently changed to the Parish of Madison. A second trial has also resulted in a judgment sentencing the accused to undergo the penalty of death. Hence the present appeal.

The record presents nine bills of exception taken to the proceedings in the District Court. We will now proceed to consider the questions of law raised in this case.

I. The second indictment was found at the October term, 1856. Thereupon the accused by his counsel, moved the court to compel the State to elect under which indictment it would proceed. This motion was overruled. But it does not appear that any bill of exception was taken to this decision. As the present proceeding and conviction is under the second indictment, it would seem that a bill of exception was required to make the first indictment a part of the second record. However, this may be, the accused in this instance has suffered no embarrassment from the first indictment, for it seems to have been dropped. Moreover, it is said by Mr. Wheaton, " that the pendency of an indictment is no ground for a plea in abatement to another indictment in the same court for the same cause." Wheaton Crim. p. 189, ed. 1852. Butler, justice, in *King* v. *Shetton*, 1 Douglass, 240. *King* v. *Wynn*, 2 East. R. 226. 3 Burrows, 1668. 3 Cooke. Charles 147, Whitpole's case.

II. The accused then pleaded several matters in abatement, and caused the District Judge to certify the fact in a bill of exceptions.

FIRST. It was pleaded that the grand jury who found the bill were not legally impannelled, for the reason that a grand jury had been impannelled on the first day of the term, and the prisoner alleges they were improperly discharged and a new grand jury impannelled. But it appears from the bill of exception, that the first venire, including the grand jury, was set aside on the challenge and objection of the accused and some others to the array. He cannot now be permitted to complain of the order of the judgment directing a new venire as it was the consequence of his own act.

SECOND and THIRD. It was objected that the pretended grand jury originated this prosecution without any previous charge before a magistrate, or preliminary examination at which the accused could be heard, or where he could confront the witnesses. On this branch of the so called plea, the Judge *a quo* makes the following statement, viz: " It was also proven that there had been no previous prosecution of the accused or any previous or preliminary investigation of the offence charged in this indictment, prior to the investigation by the grand jury, and that this prosecution originated by the District Attorney, *Wade H. Hough*, preparing the bill of indictment, and indorsing thereon the names of the witnesses on the part of the State, and submitting said bill with the indorsement of the names of said witnesses thereon, and that the testimony given before the jury of inquest at the time the inquest on the body of *Patsy Bunger*, deceased, by *M. C.*

*Jones,* Justice of the Peace, acting as Coroner, which proceedings in holding said inquest and the evidence given before said jury of inquest was before the grand jury when they found this indictment, are annexed hereto and made a part of this bill of exceptions, marked C." The finding of the jury of inquest was, that *Patsy Bunger* came to her death by wounds inflicted by the prisoner with malice aforethought. It does not, therefore, appear to be a case where the proceeding strictly originated with the grand jury. But I have no hesitation in saying that under our law, bills may be originated before the grand jury without any previous proceeding before committing magistrates. This right of the grand jury is not only derived from the common law, but it has been recognized and sanctioned by those numerous statutes, which the lawgiver has required the District Judge at each jury term of the court to be given in charge to the grand jury.

At common law, as well as under the former practice of our own courts, the presentment was a very common mode of originating prosecutions. Chitty in his work on Criminal Law, p. 163 ,says : " Presentment in its limited sense differs only from an indictment, in being taken in the first instance by the grand jury, of some offence within their own knowledge and into which it is their duty to inquire. After the presentment has been delivered into court by the grand inquest, an indictment is framed upon it by the officer of the court, for it is regarded merely as instructions for an indictment to which the party accused must answer."

At common law there was so little necessity for an examination of the accused previous to the finding of the indictment that a collateral verdict of twelve men was often sufficient to put the party upon his trial without any indictment at all. Thus, the finding of the jury under a Coroner's inquest in the case of a violent death, in which it was found that the deceased came to her death by wounds or injuries inflicted by the accused with malice aforethought, might stand in the place of the indictment, and the party might be arraigned thereon. 1 Chitty, 163. See other cases *verbo* Indictment. 3 Bacon's Abridg. p. 93.

If the grand jury have no power to originate prosecutions, the giving of particular statutes in charge to them is an idle ceremony, and the Legislature has done a vain thing in requiring such charge from the District Judge.

I do not perceive the danger apprehended by counsel in leaving this power with the grand jury. They are drawn from the body of the people, and they cannot act without the assistance of the District Attorney or some officer performing his duties. The accused has, therefore, but little to apprehend from malicious prosecutions in this form, and he is finally shielded by a trial by a petty jury, and further protected by a power to change the venue in cases of popular prejudice.

The Constitution guarantees to the accused that he shall not be prosecuted except upon an indictment or information, and that he shall have a speedy public trial by an impartial jury of the vicinage and the right of meeting the witnesses face to face. But this does not entitle the accused to the right to a cross examination of the witnesses before the grand jury, or to a previous examination of them in the event he be not arrested before they are sent to the grand jury. Under Art. 103 of the Constitution, the prosecution is not formally commenced until the indictment is found or the information is filed. Of course these remarks are not intended to apply to the rights of the accused, at the preliminary examinations, nor of his rights under a writ of *habeas corpus.*

FOURTH. It is urged that the indictment ought to have been quashed because it is said that it was found upon the testimony taken at the Coroner's inquest. We

have copied into this opinion already the facts found by the District Judge on this part of the case. And by a careful examination of them, it will be seen, as I think, that they have relation to the manner in which the prosecution originated. The bill of exception does not show that it was not found upon the testimony of the witnesses whose names were indorsed upon the bill, nor that the Coroner's inquest and testimony taken before him were considered as proof of any fact by the jury when they found the indictment. I am not prepared to say that it vitiated the indictment because the District Attorney laid the inquest and testimony, if such be the case, before the jury, to induce them to send for the witnesses, provided the bill was afterwards found upon the testimony of the witnesses, nor that an indictment ought to be quashed because the foreman of a grand jury should have the testimony of the witnesses taken on a preliminary examination, or even the Coroner's inquest before him to assist him in conducting the examination of the same witnesses before the grand jury. The presumption of law is, that the grand jury have acted properly in the finding of a bill of indictment, and as the law has made no provision for the taking of bills of exception to proceedings before them, it is but reasonable to require the party who objects to their finding, to show that the indictment is found upon illegal and insufficient proof. This is not, as I think, clearly shown by the bill of exception in this case. What is therein stated is not wholly inconsistant with a proper finding by the grand jury upon the testimony of the witnesses.

III. The regular session of the court for the Parish of Madison commenced by law on the 4th Monday, viz: the 25th day of October. The court was adjourned over by a written order from the Judge at chambers for two weeks, viz: to Monday the 8th of November, no other term intervening. The jury summoned for the first and second week of the term, it seems were required to be in attendance. The District Judge being present on the 8th of November, the accused moved the court by way of challenge to the array, that the venire summoned for the first and second weeks of the court should be set aside, because the court had not power to hold over the jurors to a week for which they had not been summoned. The adjournment of the court did not make it an adjourned term. The October term of the court might have continued until the fourth Monday of November. The continuances of the court over for this period did not make two terms. See Phillips Rev. Stat. p. 248, sec. 53. I understand an adjourned term of the court to be one where, at the adjournment of a regular term, the Judge, satisfied of its necessity, orders a term to be held after a term has been held in another parish, and requires the proper notices to be given. A special term may be ordered at chambers, and held also after proper publication at any time not interfering with any legal term. See Phil. Rev. Stat. 284, §§49, 51. It is true, at the adjourned or special terms, if needed, juries ought to be summoned, but this is not required at any adjournment at a regular term. It is also true, that the Statute says that the jury shall be discharged at the end of the week at which they are summoned, and it urged that the District Judge had no power to hold the jurors over to a day after their week for which they were summoned had expired. It was in the power of the District Judge, had he been present on the first day of the term, to compel the attendance of the jurors at the day at which the court adjourned, by causing them to be summoned on a special venire, as this power is expressly reserved to the District Judge by the Act which provides for the attendance of the jurors. See Act 1857, p. 180. And I am not prepared to say, that the jury, from whom some service is required, (and not a mere idle atten-

dance,) may not be .held to serve out the term for which they were summoned after the arrival of the Judge, where the court has been adjourned over by a special order to the Sheriff. For this purpose, the day to which the court was adjourned, might be taken as the first day of the term; for on that day the grand jury was to be formed, and it was in fact the first day at which the jury could perform any service.

IV. It is next objected, that the accused was compelled to go to trial before the list of the jury had been served upon him who were to pass upon his trial.

The State relies upon a return of the Sheriff made upon the *venire facias* for the first week of the term, and parol proof to show that a list was really served upon the accused.

But if the whole venire had been served, which is not pretended, it would have been illegal. *State* v. *Howell*, 3 An. 52. *State* v. *Bunger*, 11 An. 607. Acts 1857, p. 197; 1858, p. 170.

The venire facias had its proper return to it previous to this second return improperly entered thereon. The first return was responsive to the command of the writ. The second pretended return had no relation thereto, and was not of a matter contained therein.

Hence, the suppsed return of the writ of venire facias, which contained the grand jurors, those excused and those not served, must stand precisely as if made upon a blank piece of paper.

In order that it may be better understood I give the second return in full. It is in these words, viz:

" Received on the 8th day of November, 1858, a certified list of the jury for the first week of the within *venire facias*, who are liable to service as petit jurors for the adjourned term of the Tenth Judicial District Court of the State of Louisiana, of the Parish of Madison, commencing on the 8th day of November, 1858, and delivered the same to *William G. Bunger*, in the prison of the Parish of Madison, on the said 8th day of November, 1858. Madison Parish, La., Nov. 11th, 1858. (Signed,) F. M. Dawson, per A. D. Ramsey, deputy."

Here it is seen, that the Sheriff only served a list of such persons upon the accused as were " liable to service as petit jurors for the adjourned term of the court." Who they were does not appear of record in this case. We have only of record the opinion of the Sheriff, that they were the proper persons and the right number.

Now, is this sufficient? In my opinion it is clearly defective. The law requires the Sheriff to make service of petition and citation. Will the Sheriff's rereturn supply either? Can a record be made up of Sheriff's returns? Here the accused by a bill of exception in due form excepts to going to trial until the list of jurors are served upon him. We look into the record to see if there is any evidence of such service, and we find nothing but the above Sheriff's return and the parol testimony of the clerk (also excepted to) to prove this important fact. The District Attorney in his brief on this point says : " It does not appear of record that the defendant denied service of a list of the jury which was to pass upon his case. The evidence, (Trans. p. 30), the clerk, *F. M. Couch's* evidence (Trans. p. 31) and the Sheriff's return, (Trans. p. 33), go to show conclusively that there was a list of the jury made out who were to pass upon defendant; that he was served with the same, and in sufficient time for the trial. It is fair to presume that defendant was in possession of said list, although he did not produce the same in court." He adds, " To say the most of this matter, though it was

simply one to have brought up the question of continuance; and the Supreme Court has often decided that that was a matter in the discretion of the lower court, and should not be reviewed by this court."

It is not, therefore, pretended by the State, that this record contains any list of jurors served upon the accused. The facts embodied in the bill of exception taken by the accused, appear to have been added for the benefit of the State. This bill in these words :

" Be it remembered, that when this case was called by the court, on Thursday, the 11th day of November, 1858, the accused, by his attorney, objected to the trial being proceeded with, and the jury empannelled at this time, for the reason that there had been no service of the list of the jury which are to pass on his trial, delivered to him two entire days before this time. On the trial of which objection, the *vernire facias*, with the return of the Sheriff of the summoning of some of the jurors, and his failure to summon others, and the return of the Deputy Sheriff of the manner of service of the jury list, endorsed on the *vernire facias* by *A. D. Ramsay*, Deputy Sheriff, on the 11th November, 1858, were offered and received in evidence; said document being marked ' A' and attached hereto and made a part of this bill of exceptions. Also, extract from the minutes of this court, marked ' B' which is annexed hereto, and made a part hereof; also, the evidence of *F. M. Couch*, Clerk of this court, *A. D. Ramsey* and *T. M. Dawson*, taken down at the time by the direction of the honorable the presiding Judge of this court, to serve as a statement of facts, which evidence is annexed hereto and made a part of this bill of exceptions, marked ' C,' and the oath of *A. D. Ramsey*, Deputy Sheriff, marked ' D.' "

The testimony of *Ramsey* and *Dawson* referred to in the bill, relates entirely to the appointment of the Deputy Sheriff, which was verbal only.

The testimony of the Clerk excepted to and referred to in the foregoing bill, was, that " he thinks the copy of jury list was made after the above named (viz, six) jurors had been excused ; states that the list was made out and delivered to the Sheriff on Monday, the 8th November, 1858."

" Examined by defendant" :

" States, according to his *best* recollection, the list was made after the minutes of the court for Monday had been written up and the jurors excused."

This mode of proving a fact which ought to appear of record, appears to me wholly inadmissible.

The law requires that the accused " shall have a copy of the indictment and a list of the jury which are to pass upon his trial, to be delivered to him at least two entire days before the trial."

Where this formality is not waived, it must appear of record, because required by the statute, and the omission cannot be supplied by parol proof, much less the uncertain evidence in this record.

It is not a question of fact, whether service has or has not been made, to be decided solely by the District Judge, but a requirement of the law which may be examined by the appellate court. Phillips Dig. 162, sec. 18.

V. The entire panel having been exhausted in this case, (two jurors only having been sworn), the accused claimed that the list of talesmen should be served on him, two entire days, in order that he might have time to prepare his challenges. This right being refused, the accused excepted. The court did not err in this. See *State* v. *Reves*, 11 An. 686.

VI. It appears that the talesman were summoned from the town of Richmond

and other parts of the parish, and not in the presence of the court. They were objected to by the prisoner on the following grounds, viz : 1st, that the court was without power to summon jurors for a particular case ; and, 2d, that the officer acted illegally and partially, having summoned said jurors, during the adjournment and out of the presence of the court.

The objections of the prisoner having been overruled, he excepted.

It is well known, that in the country parishes, where the population is sparse, that it is frequently impossible to form a jury *tales de circumstantibus.* There then must be power to summon jurors beyond the precincts of the court, or there will be a failure of justice. The latter cannot happen. The more regular way would be, (where there were not any bystanders in court from whom the remainder of the panel could be formed,) to enter an order on the minutes, directing the Sheriff to summon a given number of jurors to serve as talesmen in the case named, and that a *venire* issue to him to summon them *instanter*. See Act of 1857, p. 180 ; 3d vol. Black. 364.

But I am not prepared to say that a jury summoned from the parish at large, by the Sheriff, under the oral order of the Judge, would not furnish competent talesmen when once within the precincts of the court. 5 An. 315.

It may be said that the Sheriff or his deputies may act with partiality. This might also happen in the presence of the court. On a sufficient showing, no doubt, the District Court might direct the proper officers to open the jury box and draw therefrom a special *venire* of talesmen not to exceed thirty-two, to be summoned instanter, and so on, until a jury should be completed, the names of the jurors so drawn being immediately returned to the box.

VII. Exceptions were taken as on the former trial, to the ruling of the Judge *a quo*, upon the challenge for cause. The following appears to me to be well taken : *George W. Waugh*, a juror called to the book and sworn on his *voir dire*, answered :

1st question by defendant. Have you formed and expressed an opinion relating to the guilt or innocence of the prisoner ?

Answer. I have formed and expressed an opinion.

Int. 2d. Have you heard a good deal said about the case ?

Answer. I have.

Question by the State.

1st. Have you heard any evidence in the case ?

Answer. I have not.

2d. After hearing the evidence, could you give a fair and impartial verdict ?

Answer. I could.

Question by defendant. Have you heard the facts of the case ?

Answer. I heard *Bunger*, the accused, speak of them himself.

2d interrogatory by defendant. Is it now your opinion that the accused is guilty of the crime of which he is charged ?

Answer. It is.

Question by the court.

1st. Have you an opinion or prejudice which will prevent you from doing impartial justice after you shall have heard the the testimony.

Answer. I have none.

It is quite evident the juror did not stand as one who had only heard rumors in regard to the case. He had heard *Bunger* speak of the facts of the case himself, and nevertheless was of the opinion, that the accused was guilty. He had

locked up in his breast, important evidence and he was beyond the reach of cross-examination.

Persons governed by prejudice are mostly unaware of its extent, and hence a person who has formed his opinions from hearing the witnesses or conversations with the accused, ought to be excluded, notwithstanding his own opinion of his capacity to render a just verdict.

Another juror stated, that he thought that circumstantial evidence different from what he had heard, would not change his opinion. In these two cases, the accused ought not to have been compelled to exercise a peremptory challenge to set aside the the jurors. See *State* v. *Brette*, 6 An. 656 ; *State* v. *George*, 11 An. 607 ; 8 Rob. 535 ; *State* v. *Brown*, 4 An. 505.

The law gives the accused a right to twelve peremptory challenges, and he is not bound to use one of them, so long as he has a valid challenge for cause. Any other rule would embarrass the accused and his peremptory challenges might thus be exhausted upon jurors against whom he had sufficient challenges for cause. As the accused must except, when the court decides a point against him, he is not obliged to wait in order to see whether he will exhaust all his peremptory challenges or not, before he tenders his bill. In a case like the present, where almost the whole jury were to be formed from talesmen, it was perhaps of the utmost importance to the prisoner, to husband his peremptory challenges.

The District Judge certified the facts as to the jurors, precisely as it was done in the cases of the *State* v. *George*, 8 Rob. 537 ; *State* v. *Brown*, 4 An. 505 ; and *State* v. *Bunger*, 11 An. 607. This court acted upon the statement in those cases, and there is no reason why a different rule should be adopted now.

It is true the District Court passed upon a question of fact when it found the jurors competent, but at the same time it applied a rule of law which the accused has the right to have reconsidered in this court, precisely as he has of the Judge's charge to the jury.

VIII. A bill of exception was also taken to the charge of the Judge to the jury, both as to the matters given in charge by him of his own accord, and his refusal to charge on certain points as requested.

It is objected that the District Judge did not inform the jury what constituted the crime of murder.

If the counsel of both the State and the accused were agreed on that point, and had explained the same to the jury, the charge on that branch of the case would have been superfluous. We do not find in the charge the exact language mentioned in the brief of defendant's counsel. It might have been, perhaps, more guarded, but taken together, I do not discover that it makes the killing the absolute test of the offence, as supposed by defendant's counsel. The jury were informed, that if the killing were wilful, that malice is implied, and that the absence of malice must be accounted for to the satisfaction of the jury. If there were error in this portion of the charge, it did not prejudice the prisoner. For the jurors might have been informed, that if they found that the homicide was commited by the accused, deliberately or without adequate provocation, the law implied malice, and it was incumbent upon the prisoner to show, from evidence or by inference from the circumstances of the case, that the offence was of a mitigated character, and did not amount to *murder*, and they might have been informed further, that no affront by words, or gestures, or former quarrels, (where any time has intervened,) are a sufficient provocation to extenuate the killing from murder to manslaughter. 3 Greenleaf's Ev., p. 132, sec. 144 ; 4 Black. 200.

The counsel for the accused requested the court to charge the jury, that "a confession of a capital crime, from the nature of the thing, is a very doubtful species of evidence, and should be received with great caution."

This charge was refused by the Judge, and the prisoner excepted. The charge requested is in the language of a respectable writer on criminal law. But I think it was not error to withhold it. For under the same circumstances, the confession of the party might make conclusive proof, whilst an uncorroborated confession, in the absence of facts, showing that a crime had been committed by any one, might not be entitled to any serious consideration whatever.

The same author, quoted by the counsel for the accused in the bill of exception, says in another place, that : " A free and voluntary confession by a person accused of an offence, whether made before his apprehension or after ; whether on a judicial examination or after commitment ; whether reduced to writing or not ; in short, any voluntary confession made by the defendant to any person, at any time or place, is strong evidence against him, and, if satisfactorily proved, sufficient to convict according to the English rule, without any corroborating circumstances." Wheaton, Crim. Law, p. 252, ed. 1852.

The other matters which the prisoner requested to be given in charge to the jury, it seems, were in fact given in another form.

Being satisfied that the judgment is clearly erroneous, I think the case ought to be remanded for a new trial.

LAND, J., concurs in this opinion.