## No. 7898.

### STATE OF LOUISIANA VS. J. G. RICKS.

The temporary and voluntary absence of the accused from Court during some of the unimportant proceedings of the trial, especially as no injury therefrom is urged, is no sufficient ground to reverse the judgment rendered against him.

The following charge to the jury, viz: "In cases where threats and hostile acts are proven, the jury may also consider the general character of the deceased. The fact, however, that the deceased was a man of dangerous character does not justify the killing, but only enables the jury to pass on the danger of the attack," is too restrictive as to the effect to be given to the testimony and may mislead the jury, and, therefore, invalidates the verdict.

This charge being in writing and embodied in the Record, and involving a question of law, can be revised by this Court on an assigment of errors, although no Bill of exceptions was taken to the same.

A juror stating on his voir dire, that he has formed a fixed opinion in regard to the guilt or innocence of the accused, but that said opinion would yield to testimony showing the facts to be different from what he heard, is an incompetent juror.

APPEAL from the Eighteenth Judicial District Court, parish of Tangipahoa. *Thompson, J.*

J. C. Egan, Attorney General, for the State,

Whitaker & Adams, Addison & Edwards, and J. H. Muse, for Defendant and Appellant.

The opinion of the Court was delivered by

LEVY, J. The defendant was indicted for manslaughter, tried, convicted and sentenced to ten years' imprisonment in the penitentiary. From the sentence and judgment he has appealed.

State vs. Ricks.

The grounds on which he seeks the reversal of the judgment, are:

1st. Because the prisoner was absent from the court during portions of the trial. It is not contended or shown that any injury resulted from such absence. The prisoner was under bond; if he absented himself, it was voluntarily done by himself. The record shows that he was present during the arraignment, empaneling of the jury, the charge of the court at the rendition of the verdict, and when sentence was pronounced. At no time during any of the material proceedings was he absent. His short absence occurred during the argument of one of his attorneys, and again during the examination of a witness by his attorney. This was known to his counsel, who did not bring the fact to the attention of the court, and it is not urged that the prisoner suffered any injury thereby. The defendant chose voluntarily to absent himself from court on these occasions. It might be different if such absence were involuntary on the part of the prisoner; but under the circumstances of this case, we do not think that the temporary voluntary absence of the prisoner during the proceedings which were had during his absence, which did not include his arraignment, empaneling of jury, charge of the judge, rendition of verdict, sentence of court, or even motion for new trial, a motion in arrest of judgment, afford sufficient grounds for setting aside the verdict. Wharton's Crim. Law, § 3365.

In his assignment of errors, the defendant urges that the court *a qua* erred in its written charge to the jury, in giving the following instructions: "In cases where threats and hostile acts are proven, the jury may also consider the general character of the deceased. The fact however, that the deceased was a man of dangerous character, does not justify the killing, but only enables the jury to pass on the danger of the attack."

We think the charge above quoted, and which the defendant has assigned as error on the face of the record, is too restrictive as to the effect to be given to testimony as to the dangerous character of the deceased. The fact that the deceased was a violent, quarrelsome, vindictive, desperate or dangerous person, does not of itself justify one in killing him; such a doctrine finds no countenance in law and reason; but where threats and hostile acts or demonstrations are proven, the fact of the dangerous character of the deceased should not be confined in its consideration by the jury to the danger of the attack or hostile demonstrations by the deceased, but the accused is entitled to have the jury consider whether or not it afforded *reasonable* grounds of fear or apprehension in his mind at the time of the killing that the life of the accused was in imminent danger from such attack or demonstrations, or that he was in imminent danger of serious bodily harm. (Wharton's Am. Crim. Law, § 641 and authorities there cited). This charge was cal-

culated to restrict the jury to a consideration *only* of the danger of the attack, while they should have considered not only whether the attack in itself was dangerous, but whether from the character of the deceased the accused had reasonable grounds to believe or to fear and apprehend that he *was* in danger. This charge was well calculated to mislead the jury on the point stated and to deprive the defendant of the consideration by the jury of the question whether accused had reasonable grounds for fear and apprehension, etc. This charge was given in writing, and is embodied in the record; it involves a question of law, and although no bill of exceptions appears to this portion of the charge, we think it must be considered by this Court under the assignment of error on the face of the record. In 20 A. 389 this Court held, that "an appellate jurisdiction in criminal cases is limited to questions of law alone. These questions must be presented by bill of exceptions *or assignment of errors;* or the errors must be apparent on the. face of the record." Wharton, in his treatise on Criminal Law, § 3162, says: " The law is to come from the court, and the court is bound to give the aw, and it has been repeatedly declared that the defendant has a right to a full statement of the law from the court; and that a neglect to give such full statement, when the jury fall into error, is sufficient reason for reversal." See authorities quoted in note, (c.) We think the error of law complained of in the charge appears on the face of the record, and therefore, is properly before us on the assignment of errors.

The objection as to the illegality of the jury, as set forth in the bill of exceptions, is in our opinion met by the decision of the court *a qua* on the motion to set aside the jury ordered to be and actually drawn on the 5th of April, 1880, and summoned to appear on the eighth of same month. The challenge to the array, for the reasons given by the judge *a quo,* came too late.

The defendant excepted to the ruling of the court *a qua,* that R. C. Lanier was a competent juror. On his examination upon his *voir dire,* this juror testified that, " he had formed a fixed opinion in regard to the guilt or innocence of the accused; that said opinion was formed from conversation with different persons, but he did not know whether said persons are witnesses in the case or not; and further declares that said opinion would yield to testimony showing the facts to be different from those that he had heard;" and, in response to counsel for the accused, said Lanier declared that, from what he had heard of the case from said persons, he had formed a fixed and deliberate opinion in regard to the guilt or innocence of the accused; and being interrogated by the court, he reiterated his declaration that he had formed a fixed and deliberate opinion in regard to the guilt or innocence of said accused, but that it would yield to con-

trary evidence, whereupon the court decided that said Lanier was a competent juror (the question of competency having been previously raised by defendant's counsel). We think the exception was well taken, and the court *a qua* erred in this ruling. While the decisions on this point are in conflict in many of the States of this Union, the weight of authority and reasons adduced preponderate in the opinion that it being the intention of the law that the accused should be tried by an impartial jury, unbiased and unprejudiced, and while mere vague impressions, based upon newspaper reports or general rumor, do not render a juror incompetent in the case in which such impressions or opinions have been formed, yet the formation of a "*fixed*" or "*deliberate*" opinion destroys his competency. *Fixed* and *deliberate* opinions must, of necessity, create bias in the minds of those who entertain them. An opinion fixed, after deliberation on the subject-matter to be tried, necessarily, from the very constitution of the human mind, prevents an impartial and unbiased state of mind on the part of the jury, which the spirit and policy of the law require. Our own Supreme Court held, in State vs. George, 8 Rob. 537, these views, and in that case said : " But where a deliberate opinion has been formed the jurors have, in most cases, been excluded." This is, substantially, the rule laid down by C. J. Marshall, in Burr's trial, and was adopted in the case just cited. We think that Chief Justice Merrick, in his dissenting opinion in the case of State vs. Bunger, 14 A. 472, also laid down the correct doctrine when he held : "The law gives the accused a right to twelve peremptory challenges, and he is not bound to use one of them, so long as he has a valid challenge for cause. Any other rule would embarrass the accused, and his peremptory challenges might thus be exhausted upon jurors against whom he had sufficient challenges for cause."

The fact that Lanier did not serve upon the jury, and the argument that it is shown that the accused did not exhaust his peremptory challenges, cannot contest the doctrine nor refute the reasons supporting it.

It is, therefore, ordered and adjudged and decreed that the verdict and sentence of the lower court be set aside, and its judgment reversed, and that this case be remanded to the said lower court to be proceeded with in a new trial according to law.

### CONCURRING OPINION.

FENNER. J. I concur in the decree herein on the last ground stated in the opinion just read.

I also concur in the legal correctness of the additional propositions stated in the opinion, which should have been added to the charge of the judge, had they been asked by counsel of the accused. But I am

not prepared to say—in the absence of any refusal by the judge to charge those additional propositions, and of any objection on the trial—that the charge, in the general terms in which it is given, is so exclusive, either in idea or expression, of such propositions as to justify the remanding of the cause on that ground alone.

To justify such remanding, charges, not objected to when given, must either affirmatively state the law erroneously, or, if correct as far as they go but incomplete because they do not go far enough, they must be so inconsistent with the additions which might have been required, as to be equivalent, by implication, to a rejection of the latter.

I do not find such to be the case here, but think the court might, and probably would, have added the points referred to, if its attention had been called to them, without the necessity of altering a word in the charge as given.

---

*Ex parte* F. A. SCHAEFER, ESQ., Applying to be Examined for License to Practice Law in the Courts of Louisiana.

Section 113, Rev. Sta., which provides for the manner in which attorneys from other States shall be licensed to practice in the Courts of Louisiana, is still in force and not repealed by Act No. 136 of 1877.

---

The opinion of the Court was delivered by

FENNER, J. The applicant, presenting licenses granted him by competent authority to practice in the highest courts of record of both the States of Ohio and Texas, together with proper testimonials of character, prays to be examined on the laws of Louisiana, and, if found qualified, to be licensed to practice in any and all the courts of this State.

Question having arisen as to whether the provisions of Act No. 136 of 1877, requiring all candidates presenting themselves before the Supreme Court for admission to the bar to produce evidence of having studied law for two years, under the direction of a competent attorney and counsellor-at-law of this State, and repealing all laws in conflict therewith, do not repeal section 113 of the Revised Statutes, and apply to duly licensed attorneys from other States as well as to all other candidates, we deem it advisable, for the guidance of all interested, to determine the question.

At the time when this statute was passed there were in force two sections of the Revised Statutes on this subject, (section 114 having been previously repealed), viz : Section 112, which provided for the granting of licenses by the Supreme Court, and which covered the cases, first, of graduates of the law department of the University of Louisiana;

*Ex parte* Schaefer.

second, licensed lawyers of other States third, graduates of law schools or colleges of other States fourth, applicants found qualified after examination by the Supreme Court. As to all these classes, except the second, the Supreme Court was the *only* authority competent to grant licenses, and it was necessary that they should present themselves before that Court.

But by section 113, it was provided that " any person having been licensed to practice law in the Superior Court of any of the States of this Union, on the presentation of said license to any one of the judges of the Supreme Court, or any two of the judges of the District Courts, with evidence of good moral character, who, after being duly examined by such judge or judges on the laws of Louisiana, and found qualified, shall be, by said judge or judges, licensed to practice, etc."

Thus it appears that there existed two classes of applicants, one of persons who must apply to the Supreme Court and could not be licensed by any other authority, the other of persons who were not required to apply to the Supreme Court, but could be otherwise licensed. The statute of 1877, by its terms, applied only to candidates presenting themselves before the Supreme Court for admission to the bar, and did not refer or apply to candidates who were not required to present themselves to that court, but could be licensed by other authority. It only repealed conflicting laws, and left section 113 of the Revised Statutes in full force. The applicant, therefore, may, at his option, apply for examination and license either to any judge of this Court, or to any two judges of the District Court, or since the five judges of this Court may certainly do what any single one could do, he may present himself for examination before the whole bench of this Court, and, if found qualified, we will all sign his license.