State vs. Melton.

## No. 9299.

THE STATE OF LOUISIANA VS. PERRY MELTON AND WILLIAM MELTON.

Error in refusing challenges of jurors for cause, even if committed, will not avail to reverse judgment, if the objectionable jurors have been peremptorily challenged, and the defendants have been able to complete the jury without exhausting their peremptory challenges.

On cross-examination, the witness may be asked by the State as to his feelings towards accused, as throwing light upon his credibility.

Where a subject matter, not perhaps strictly pertinent, has been opened on examination in chief, the other side may pursue it on cross-examination.

Error in the exclusion of unimportant evidence will not justify reversal.

The presumption of guilt from flight applies generally to cases of persons suspected of crime which has been secretly committed, but where the killing has taken place in a public fight and in the presence of witnesses; where there is no dispute that accused killed deceased, but the only question is whether the circumstances excused or mitigated the killing; the flight could have no weight as a presumption of guilt, and, in absence of any allusion to it in the charges of the judge or in special charges asked, we consider exclusion of evidence explaining the flight, as not sufficiently material to authorize reversal.

Bills of exception to special charges refused by the judge cannot be sustained, when it appears from the statement of the judge in the bills, that they trenched upon the facts, or were entirely inapplicable to the facts; or when it appears that the statement of the law had been covered by the general charge in less objectionable form.

When the judge has not been requested to deliver his charge in writing, he is at liberty to make it orally; and the fact that he has made it partly in writing and partly orally, is no ground for valid objection.

A bill of exception taken simply "to the entire charge of the court," without specifying any ground of objection, or any particular portion objected to, will not be considered, nor can error in a charge, not excepted to, be considered under an assignment of errors in this Court.

APPEAL from the Third District Court, Parish of Union. *Young*, J.

*M. J. Cunningham*, Attorney General, and *J. A. Ramsey* for the State, Appellee.

*R. H. Odom*, *G. H. Ellis* and *G. A. Killgore, Jr.*, for Defendants and Appellants.

The opinion of the Court was delivered by

FENNER, J. In this important murder case, the convicted defendants assert a multitude of errors in the proceedings of the trial court.

I.

Two bills of exception were taken to the action of the judge in overruling defendants' challenges for cause to two jurors, on the ground that they had formed fixed opinions as to the guilt or innocence of the accused.

The challenged jurors stated on their *voir dire* that, notwithstanding the opinion formed by them, they were able to render a fair and impartial verdict according to the evidence and the law. It is not neces-

sary to discuss the distinctions suggested between their cases and those presented by the following authorities in which the competency of jurors in analagous circumstances was maintained: State vs. Desmouchet, 32 Ann. 1241; State vs. Hardy, 33 Ann. 1110; State vs. DeRancé, 34 Ann. 192; State vs. Russell, 35 Ann. 304; State vs. Magee, 36 Ann. 206.

Even if there were error in the rulings here objected to, the fact remains that the defendants challenged peremptorily the obnoxious jurors, and that they obtained a complete and fair jury without exhausting the peremptory challenges to which they were entitled under the law.

It is a sound rule, which we have approved, to which we shall adhere, that, under such circumstances, an erroneous ruling of this kind affords no ground for relief. State vs. Farrer, 35 Ann. 315; Henry vs. State, 4 Humph. (Tenn.) 270.

II.

There are four bills of exception to rulings of the judge in admitting or rejecting evidence.

1. In permitting counsel for the State to ask the witness, Rushing, on cross-examination, what was the state of his feelings towards these defendants.

The bill shows that the object of the question was to throw light upon the credibility of the witness, and for that purpose the authorities sustain its legitimacy. State vs. Willingham, 33 Ann, 537; State vs. Gregory, id. 737, State vs. Kane, 36 Ann. 153.

2. In admitting evidence on the part of the State as to conversations between the witness, Rushing, and Wm. Cherry, brother of the deceased, which took place five or six months before the killing, to the effect that the defendants were stealing hogs and burning fences in the neighborhood, and that they, Rushing and Cherry, proposed to run defendants out of the country. The judge justifies his action by the statement in the bill that, in their examination of the witness in chief, defendants had opened the way to these conversations and that the State had the right to cross-examine on them, and that it was closely confined by the court to the matter inquired of by the defense. The reason is pertinent and sufficient.

3. In rejecting evidence offered by defendants to show a conversation between the defendants and James Byram, occurring near the place and shortly after the killing, to the effect that defendants requested said Byram to go for the doctor and do all he could for deceased. The judge supports the exclusion "because," he says, "it was

the declaration of the defendants six or eight minutes after the killing, and after they had left the place and gone sixty or eighty yards and then returned on their way home or wherever they went; and was no part of the *res gestæ*, either in point of time or connection with the killing and was evidently not spontaneous, as the defendants had met the same witness a few minutes before, twenty-five or thirty yards from the gate, as they were leaving, and they made no such statement."

We cannot say the ruling, under these circumstances, was erroneous; but, in any event, the matter is too unimportant to justify a reversal on that ground.

4. To the exclusion by the judge of certain evidence offered by the defense to show the poverty of the defendants and other circumstances, with the view of rebutting the presumption of guilt resulting from the flight of defendants which had been proved by the State. This is the most serious question in the case and we have given it most careful consideration. The bill of exception, as a whole, is obscure and apparently contradictory. It recites that "witness, Jeff Raybun, having been sworn, defendants offered to prove by said witness that the defendants were very poor men, which evidence was objected to by the State and excluded by the court, counsel for the defendants stating that the defendants proposed to prove by the witness on the stand and other witnesses that defendants were very poor and not able to pay anything to employ counsel and that all the attorneys' fees which had been paid or promised had been paid by a son-in-law who lived in Texas, and that there was a great deal of prejudice against the accused in the neighborhood in which the alleged killing took place, and that said evidence was offered for the purpose of rebutting the presumption of guilt which the State attempted to establish by proving the flight of the accused after the alleged killing." We are not prepared to say that such evidence, as a whole, properly offered, for the purpose stated, would not have been legitimate. But the court, in its reasons, states that it refused to allow said witness to testify to said facts "for the reason that the proof of defendants being poor men would be immaterial and irrelevant for the purpose offered, and no other witness was sworn on this point by the defense and this bill will require a determination as to whether the proposed evidence of a witness not sworn could be the subject of a bill." From this statement it would be inferred that the sole fact offered to be proved by the witness on the stand was the poverty of defendants, and that the other facts mentioned in the statement were to be proved by other witnesses who were never produced and sworn; and that the only point directly ruled

by the court was that the poverty of the defendants, even if proved, would not be material for the purpose proposed. *Non constat* that if the defendants had produced other witnesses and offered to prove by them the other facts stated in the bill, the court would not have admitted their testimony, and, after the laying such foundation, evidence of defendants' poverty also. Under this view, the course of the judge might not be objectionable. But we would not be content to rest our decision on a ground so technical, if we were satisfied that defendants had suffered any substantial injury from the action of the court.

The presumption of guilt from flight seems to have played no part in this case. It was not alluded to in the charge of the judge nor in any of the special charges asked at his hands. It is evident that it was entitled to no weight and was given none in this case.

Mr. Wharton lays down the rule on the subject in the following words:

"When a *suspected* person attempts to escape or evade a threatened prosecution, it may be argued that he does so from a consciousness of guilt, and though this inference is, by no means, strong enough by itself to warrant a conviction, yet it may become one of a series of circumstances from which guilt may be inferred." Wharton Cr. Ev. § 750.

It is obvious that the presumption applies to cases where the crime has been secret and the connection of the accused with it is to be established by circumstantial evidence. Thus, if a man has been found killed in a wood, no witness having seen the killing, and suspicion having pointed to a certain person as its author, he should incontinently flee, one can well understand that such flight might form a link in a chain of circumstantial evidence to fasten guilt upon the fugitive. But, when the killing has taken place in a public fight, in the presence of witnesses, when there is no dispute that the defendants did the act, when the only question is whether the circumstances established self-defense, or a mitigation of the crime to the grade of manslaughter, it is obvious that the flight of the accused could have no appreciable weight in determining those questions.

Such is the general inference to be drawn from the language and reasoning of all the authorities, and we find one authority quoted by Mr. Wharton which is directly in point, where it was held, that "as the defendant was clearly proved to have struck the fatal blow, it was immaterial that he had not been allowed to give evidence to explain his flight." People vs. Ah Choy, 1 Idaho, N. S., 317; quoted in Wharton Cr. Ev. § 752, Note 1.

State vs. Melton.

Now, in the instant case, it is perfectly apparent from the tenor of the various special charges asked by the defendants (hereafter to be referred to) that there was no controversy as to the fact that the deceased was killed by defendant, and, that the sole question was as to the establishment of excuse or mitigation. Under these circumstances, considering the obscurity of the bill, the immateriality of the flight, the absence of any allusion to it as a circumstance imputing guilt, in the charge of the judge or in the special charges asked by defendants, we are satisfied it had no influence in the case, and that, even if the ruling were erroneous, it did not prejudice the fair trial of the accused and would not justify us in disturbing the verdict.

### III.

After the judge had completed his charge to the jury, counsel for defense presented several special charges which the court declined to give, and bills of exception were taken.

1. The following special charge was asked : " That when the evidence is circumstantial, conflicting and contradictory, as to whether the attack was made by accused or deceased, the jury should take into consideration the feeling of the parties, previous threats, former attempts and preparations in coming to a conclusion as to who made the attack." The judge assigns as reasons for refusing this charge, that he considered it would be " trenching on the facts," and that he had already charged the jury that they were " to consider the case in the light of *all* the surrounding circumstances which had been proved, and that, on the question of whether they had or not been proved, they were the sole judges." The general charge referred to seems to embrace all that defendants had the right to require on this subject. It is not for the judge to pick out particular circumstances and tell the jury they must consider them. The jury determines for itself, whether they will consider them or not, and what consideration is due to them. Thus, referring to this particular charge, it is obvious that although the evidence may have been " circumstantial, conflicting and contradictory," it yet may have so fully convinced the jury on the point alluded to, that there would be no necessity or occasion for considering the circumstances stated. Why then, should the judge charge them that they must consider them ?

2. The Bill numbered 2, is to the refusal to give the following charge : " That if the jury should find that the defendants made the attack on the deceased, and then abandoned it without any damage being done, if deceased then pursued defendants and resumed the difficulty by

shooting at and wounding one of them with a pistol and then attempt-
ed to get to his house to get his gun, which he had ordered his wife to
bring him, defendants had the right to intercept him and prevent him
from getting his gun, and if he did get it in hand and attempted to use
it on defendants, they had the right to disarm him and even to take
his life."

The judge refused this charge for the reasons, substantially, that it
trenched upon the facts; that it referred to facts of which there was no
evidence whatever; and that it was inapplicable to the facts of the
case and calculated to mislead the jury. We cannot gainsay the suffi-
ciency of these reasons.

Sec. 991 Rev. Statute provides: "in charging the jury in criminal
cases, the judge must limit himself to giving them a knowledge of the
law *applicable to the case.* In doing so, he shall abstain from stating or
recapitulating the evidence so as to influence their decision on the
facts." The Constitution also, Art. 168, restricts the authority of the
court, in charging the jury, to the law of the case.

Under these provisions, we would not say that the hypothetical
charges based upon the jury's belief of certain facts, are to be entirely
excluded. But when such hypotheses embrace facts not supported by
evidence and foreign to the case, the propositions of law based there-
on become purely abstract propositions, and under well-settled juris-
prudence, the judge is not bound to charge them. Wharton's Cr. Pl.
and Pr., secs. 712, 797; Bishop's Cr. Proc, sect. 978; State vs. Staud-
erman, 6 Ann. 287; State vs. Thomas, 34 Ann. 1084; State vs. Jack-
son, 35 Ann. 769.

3. We have carefully considered the remaining special charges cov-
ered by bills of exception; but find it unnecessary to recapitulate them.
They are all robbed of merit by some or all of the following objections:
trenching upon the facts; or inapplicable to the facts; or covered in
less objectionable form by the general charge of the judge.

### IV.

There remain two bills directed against the general charge of the
judge, viz:

1. The first is taken to the action of the judge in supplementing his
written charge by interspersed oral statements and illustrations. It is
completely overthrown by the statement of the judge that there had
been no request by counsel for a written charge, and that, therefore,
he was at liberty to charge orally.

State vs. Melton.

2. We are next presented with a bill of exceptions taken simply "to the entire charge of the court," without specifying any ground of objection or any particular portion objected to.

Under this bill, a certain passage in the written charge is strenuously called to our attention. The same passage is made the subject of an assignment of errors in this Court.

So far as the bill of exceptions is concerned, this Court, thirty years ago, declined to countenance bills of this character, saying : It is calculated to embarrass, if not defeat, the administration of justice. The attention of the district judge should be called to those parts of this charge which are deemed objectionable, that he may have an opportunity to explain them, if misunderstood, or modify them if erroneous, or, at any rate, assign his reasons for making the charge in the form objected to." State vs. Chopin, 10 Ann. 458; State vs. Riculfi, 35 Ann. 774.

The rule is of self-evident soundness and propriety. Upon like reasons we have ourselves refused to notice errors in charges not excepted to, when assigned in this Court. State vs. Beaird, 34 Ann. 104; State vs. Curtis, id., 1213; State vs. Riculfi, 35 Ann. 770; State vs. Ferguson, decided this day.

There is no reason why we should depart from this salutary rule in the instant case. Although, not made a special ground of the application for the new trial, the objectionable passage in his charge was then called to the attention of the learned and conscientious district judge, who considers it elaborately in his reasons for overruling that motion. He informs us that, notwithstanding the irregularity of the course pursued by defendants' counsel, if he believed that defendants had been prejudiced by the passage of the charge objected to, he would have granted the new trial. He explains fully the relation of that passage to other portions of his charge in which the law was correctly laid down, expresses his perfect satisfaction that the jury were fully informed, and in no manner misled, as to the law, and that the defendants enjoyed a fair and impartial trial.

The powerful efforts of defendants' able and zealous counsel have failed to establish anything on the record justifying us in disturbing the verdict or sentence.

Judgment affirmed.

Rehearing refused.