The opinion of the court was delivered by
Nicholls, C. J.
John Jones and Henry Simmons, having been convicted of murder and sentenced to death, have appealed.
The record shows that during the progress of the trial certain confessions made ‘by Henry Simmons were, over the objections- of the defendants, permitted to be testified to and go to the jury, and that in his charge..to the jury-the District Judge, in instructing them what verdicts they could render under the indictment, failed to include that of manslaughter, and that upon his attention being called by counsel of accused to the omission of one verdict which coiild'be returned’tinder an indictment for murder, he stated to the counsel that he had thought of that but that he did not think such a verdict would be applicable to this ease.
It is claimed that it was not shown that the confessions referred to were voluntary and not free'from fear of harm and from inducement; also claimed that it was- the duty of the court to have informed the jury before retiring that, under the laws of Louisiana, in all trials for murder the jury may find a verdict of manslaughter. A question has been raised as to whether the counsel requested the judge to include a “ verdict of manslaughter” as a verdict allowable under a charge of murder, and as to whether the accused reserved a bill of exceptions to the course pursued by the judge. We find a bill of exceptions bearing on this subject which we will first transcribe, and then comment up on the situation of the case viewed from the recitals of that bill. The bill states that “on the trial of the case, while' 'the judge was completing his charge to the jury, one of the defendant’s counsel rose and stated to him ‘that he omitted to inform-’the jury that they could also render a verdict of manslaughter,’ and the judge answered: ‘ I have thought of that, but in this case it can not be done.’ Whereupon counsel said: ‘ We only call attention to this omission of your Honor to protect our rights.’ The omission of charging the jury that they could bring a verdict of .manslaughter also had a tendency to prejudice defendants’ case.”
To the above the court added:
“The court refused to charge the jury as aforesaid for the following reasons:
*1397 “ The counsel in this case made no request that I charge the jury that they could return a verdict of manslaughter, nor did they reserve a bill in this respect. What happened was simply this: After the jury received their instructions from the court, counsel remarked to the court £ that the jury had not been instructed as to one verdict, they might render in the case.’ £I remarked to counsel that I had thought of that, but I did not think such a verdict would be applicable to this ease.’ To this counsel shrugged his shoulder and simply remarked: ‘ Well, I thought I would mention the matter to your Honor,’ but he never asked for the special instructions nor reserved a bill. He did not even suggest what the additional verdict was, but I concluded it was manslaughter, as I had not instructed the jury that they could return such a verdict. I did not do so because, such an instruction could only have confused the jury and would have necessitated an elaboration upon questions of law not involved in the case at all. It was a case of absolute waylaying in the night, and the questions incident to sudden affray and combat did not, in fact, nor could they be invoked as an element of defence. I think it is the duijy of the trial judge to eliminate from the case all issues not pertinent to it, and which are calculated to draw the attention of the jury from the main facts. Self-defence, insanity and excusable, homicide are special defences which need not be discussed save when, specially made. I have given the above to show that und.er no possible theory of the defendants could they plead injury, from the failure of the court to instruct the jury that they could return a verdict. of manslaughter. Their defence was not that the killing was done under heat of blood, but that they did not do it at all.
“The murder was an atrocious one, and could not have been justified under any pretext, nor was any attempt made to. justify it. Both defendants attempted to locate themselves at places different from the one where the homicide was committed,, and that was their, sole defence.” To which ruling of the court the defendants’ counsel at the time stated, they wanted said charge made to protect their rights, and excepts to said ruling, and tenders this his .bill of exceptions. to be signed by the judge, which is done. This bill as so written we find signed by the judge. It is inartifieially drawn and it is difficult to understand from it precisely, what, did occur at the time,,of the.- giving of th.e charge. The case before us is one involving the, lives pf two..persons, and we are inclined to give to the.,.accused the. *1398 benefit of all the doubts in favor of the bill of which it is fairly susceptible. We have affirmatively shown to us, over the signature of the District Judge, a state of facts of so fundamental and radical a character that we can not shut our eyes to it, even though in bringing them to our notice the rules of practice may not have been conformed to with strict technicality. That the judge, in charging the jury, omitted to include a verdict of manslaughter as an allowable verdict on all trials for murder; that this omission was called to his attention by counsel, and that that omission was intentional, and that the judge stated to the counsel, who called his attention to the omission, that such a verdict would not be applicable to this case, are facts which the District Judge himself admits.
It may be fairly assumed from the reading of the bill that this last statement was made to counsel in presence of the jury. ,
With this condition of things in the lower court shown to us, can we permit the judgment to stand? We think not. We are of the opinion that on all trials for murder it is the duty of the District Judge ex propria moto, without request from counsel, to charge the jury that among the verdicts which they are permitted by law to return, under an indictment charging a person with murder, is a verdict of manslaughter, as much so as to inform them that under an indictment for murder it is lawful for the jury to qualify thejr verdict by adding thereto ” without capital punishment,” and that it is reversible error in any case that the judge should have failed to so inform them. And if this be so, how much stronger is the case where a judge not only fails to give such information, but expressly declares that in the ease before him such a verdict would not be applicable.
The law in this State positively prohibits the judge in a criminal case from expressing an opinion upon the evidence, and the declaration made by the judge was in direct violation of that prohibition.
This court has on several occasions been called on to express an opinion as to the duty of district judges in respect to informing the jury what verdicts they can return in a murder case.
Among the cases we refer to State vs. Brown, 40 An. 725; State vs. Brown, 41 An. 411.
The accused did not ask in this case that any special charge, peculiarly and particularly applicable to it, be given. They did not assume as existing, certain facts, and ask the court from that state of *1399 facts (facts entirely outside of any evidence in the case) to charge the jury as to the law which would be applicable, if such facts had really entered at all in the matter before them.
Counsel did not come down at all to the merits of this particular case — to its facts — or to any theory upon it. Substantially they ask the court to tell the jury, not that on the trial of this cause, and because of any particular features connected with it, that a verdict of manslaughter could be returned by the jury, but that on all trials for murder such a verdict could be returned. That being the law, the judge should have so instructed the jury. The question of injury, as resulting from the judge’s course, does not enter as a factor in the matter. The duty of the judge was absolute and mandatory, and his failure to perform it, fatal.
In the examination of this subject we noticed a sentence in the opinion in State vs. Jackson, 45 An. 1035, which, read alone and not in connection with the recited pleading and facts of that case, might be misleading, and to which, we think it not amiss therefore to refer.
In that case, which was one of murder, the District Judge had, in point of fact, charged the jury generally upon the law of manslaughter, but declined to give a special instruction asked.
In our opinion we said that “ there was nothing in the case at bar, under the statement of facts as given, upon which the court could have been called upon to charge upon the law of manslaughter, and to make his refusal to do so ground of refusal.” The sentence should properly read: “that there was nothing in the case under the statement of facts as given, upon which the court could have been called upon to make the special charge asked, upon the law of manslaughter, and to make his refusal to do so ground of refusal.”
The conclusions we have reached upon this particular branch of the case would necessitate a reversal of the judgment, and the remanding of the case, without discussion or mention of other questions involved in it, but in view of another trial, it is proper that we should refer to the confessions made by Henry Simmons, which are the subject of several bills of exception.
The first bill of exceptions was reserved by both defendants. It appears from it that the State, through one W. B. Marshall, a witness upon the stand, proposed to place before the jury a confession of Henry Simmons, one of the accused, and that defendants objected on the ground which we have already stated, but that the objections *1400 were overruled and the confession went to the jury. The circumstances under which this confession was made are thus stated by counsel to have been made by the witness. He (witness) and a number of men armed with guns and Winchester rifles arrested Simmons, who was asked how the killing was done. Simmons stated that Henry and Van Washington had done it. He (witness) told him, 1‘ Now you had better tell the truth and not tell a lie.” Simmons at the time was in apparent fear and trembling, and then and there he told them that he, Simmons, and John Jones had killed the deceased.
The judge makes the following statement upon the bill: “ Marshall (the witness) stated that he and two others had arrested Henry Simmons and that they were at the time armed, but he said that they had made no threats against the life of Simmons, nor had they offered to do him bodily harm, nor had.they made any hostile demonstration however (whatever). That they offered him no inducements, or favors or immunities. That he, Marshall, had asked Simmons who had done the killing, and that Simmons had answered that Henry Washington and Van Washington had done it. Marshall then said to him: ‘Henry, you’d better tell the truth and not lie about it.’ Simmons was not bound in any way, and had not even been arrested. He then told Marshall that he and John Jones had done the killing. Marshall testified that he then concluded to take Simmons to a party of men who had in the meantime arrested John Jones, and he did so. Simmons was then taken, and his hands were, bound together and a rope placed around his neck. Whilst in that condition he repeatedly made statements of his guilt, which were,, however, all excluded, and it was only after the crowd had concluded, not to do him. violence,, and had decided to turn him over to the authorities, that he might be legally tried, and after they had actu-, ally started with him to Marksville, the parish seat, that his confessions, to which P. J. Coco,. E. D.. Coco,. John George and others, testified, were admitted..
‘1 His first confessions were contradictory, but in his last he gave, the details of the killing with such particularity, which circumstances subsequently corroborated so thoroughly,, as to leave no doubt as to the verity of the statement.”
The second bill of exception is leveled at. the action of the court in permitting the testimony of. one John George, touching, a confes *1401 sion made in his presence by Henry Simmons, to go to the jury over objections of the same character as those mentioned in the first bill.
Counsel in this bill state that it was reserved by “ defendants’ counsel,” but the judge states that this particular bill was taken by counsel of Simmons only.
The third bill, the judge states, covers objections to the testimony touching the same confession which had been testified to by John George, but as testified to by different witnesses (Paulin J. Ooco and Edouard D. Ooco).
Counsel state in the second bill that this confession was made to P. J. Ooco and others before going to the woods, whilst they were all armed. That whilst the witness George had offered no inducement or made no threats, yet others had done it a short time before to extort said confession, which had previously been excluded for said reasons. They objected that a confession extorted through inducement or threat can not be received in evidence when made to a person who had arrived after said threats had been made or inducements offered, and that any confession made after that time is not voluntary.
The court overruled this objection, stating that the confession' was made at a different time and place, and under'circumstanced totally different from those under which the excluded confessions were made. This confession was made under no offer of violence, threats or immunities, and when- the parties who had charge of the’ accused had decided to' turn him over to the authorities, and whilst the prisoner was being taken to the parish seat. No confessions made by the defendant whilst the attitude of the mob was menacing, and whilst he may have apprehended bodily harm, were received in evidence. The one received was made by him voluntarily and under no improper influences.
In the third bill the defendants assert that Paulin -J-. Ooco and Edouard D. Ooco testified that the confession was-made while anum-' ber of men- armed with guns and Winchester rifles had Henry Simmons under arrest, and whilst coming from the woods with Sim-: mons, who had his hands tied and a rope around his neck. That whilst such was the situation,- Simmons broke out' in- a laugh; saying he would have more time to meet the- “Old Man/” and that -Simmons then said also that he and John Jones had waited until midnight under an oak tree near by for the deceased to pass by in order to *1402 kill him. That this was on the Thursday night previous to the killing, and that on Sunday night he (Simmons) had shot Bond and missed him and Johnnie Jones had finished him, and they maintain that this confession was not voluntary and free from fear or inducements.
The judge, in overruling the objection, said: “This is the confession testified to by John George and others, and it was’made under the circumstances stated in the bill of exceptions to George’s testimony.”
The District Judge differs in his statement of facts and in his conclusions from the counsel of the prisoners. Were we imperatively called upon in this case to pass now upon the admissibility of the confessions in evidence, we would be forced (inasmuch as the testimony of John George, Paulin Ooco and Edouard Coco is not in writing) to be guided by the statements of the judge.
In view of this difference and of the ordering of a new trial, at which the testimony will be taken de novo, and matters then placed, we hope, in such a shape as to present this question before us, should it arise again, free from any conflict between the judge and the counsel, we do not feel at liberty to dispose of it as matters stand. The exact details of the situation when each of the confessions took place, the connection of the parties present at the time the one was made with those present at the time the other was, the continuity of events or the break of the continuity, the intervals between the confessions, the places where each was made, the order in which they were made — everything, in fact, tending to show the circumstances under which the confessions were made, should be clearly brought out and recited. Mere conclusions of fact should not be depended upon or sent to us on which we will be expected to base our decision.
There is one matter connected with the bills which has attracted our attention and to which we think it proper to refer.
In the first bill of exceptions the District Judge passes outside of the particular confession then before the court to another confession made by Simmons, and in respect to this he says that in it “ he gave the details of the killing with such particularity (which circumstances subsequently corroborated so thoroughly) as to leave no doubt as to the verity of his statement.”
If the District Judge, in reaching his conclusions as to the admissi *1403 bility of the confessions, was influenced by the consideration that “the facts detailed in them were found subsequently to be so corroborated as to leave no doubt as to the verity of the statement,” he committed an error. The discovery through a confession of facts, legally admissible in evidence, and tending to prove a defendant guilty of the charge against him, would not render admissible the confession itself, if it wa3 not voluntary and free from compulsion or inducement. The question at that time before the court in this case was the admissibility of the confession, not its truthfulness. Yates vs. The State, 1 S. W. Reporter, 65.
Before closing this opinion we feel it our duty to allude to the “ minute entries ” in this case. They are carelessly and imperfectly made. The minutes of each’ day should show exactly what took place in the case on that’ day, and the District Clerk is not justified in making, to cure prior defective entries, a general entry on the last day of the trial “that; the accused was present from the beginning to the end of the trial.”
The number of judgments which this court has been forced to reverse and remand by reason of defective records calls upon us to urge upon District Attorneys the necessity of their giving personal supervision each day to the entries made in criminal cases by the clerks.
Eor the reasons herein assigned, it is ordered, adjudged and decreed that the verdict of the jury be set aside, and the judgment thereon rendered be and the same is hereby annulled, avoided and reversed, and that the cause be remanded to the lower court for further proceedings according to law, the parties charged to remain in custody.