State vs. Mayfield.

---

No. 13,647.

|104   173|
|117   476|

STATE OF LOUISIANA VS. EMANUEL MAYFIELD.

SYLLABUS.

1. Objection to the action of the court in overruling a motion for a continuance should be preserved by a bill of exception, taken at the time, and not brought up in a bill first taken on the overruling of a motion for a new trial. If considered at all, when so made the objection must be considered from the standpoint of the whole situation as developed by the trial.

2. Though a juror state that he had formed an opinion in the case, from having talked to two of the witnesses whom he knew to be truthful men, and that it would take strong evidence to remove the opinion he had formed, he will be held a competent juror when he further states that he had no fixed opinion; that his mind was in such a condition that he could go on the jury and depend entirely on the law and evidence in arriving at his verdict; that he had no bias or prejudice against the accused; that he could disregard the opinion he had, and it would have no influence or effect in determining his verdict, and the court declares that the juror was a man of high character, and it believed he was answering truthfully.

ON APPEAL from the Fourth Judicial District, Parish of Lincoln. —*Dawkins, J.*

---

State vs. Mayfield.

---

*Walter Guion,* Attorney General, and *F. F. Preoux,* District Attorney, (*Lewis Guion,* of Counsel,) for Plaintiff, Appellee.

---

*William A. Van Hook* for Defendant, Appellant.

---

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. The defendant, a colored man, indicted for the murder of a colored boy, was found guilty of manslaughter and sentenced to the penitentiary for fifteen years.

He appealed.

His first assigned ground of complaint is the overruling, by the court, of a motion made by him for a continuance.

The grounds set up in this motion were that he had only been indicted, arrested and made acquainted with the charge against him, on the 13th of August, 1900; that he was totally without means to procure an attorney, as were also his relations and friends; that it was only late on Saturday evening, September 1st, that he succeeded in employing one; that this attorney was pressed with other business which necessarily required and took up a part of the two days which were given to him to prepare defendant's defense; that he had, on Monday, the third of September, to defend a party charged with wounding less than mayhem, and had many important civil cases; that the weather was exceedingly hot and taxing to strength, and his attorney was not physically strong; that there was a very strong feeling of indignation and prejudice against him in the neighborhood in which the murder was charged to have been committed; that he feared and believed that this state of feeling would work injuriously against him on trial, unless his attorney could be given time to acquaint himself with this prejudice; that he believed that there would be some important circumstantial evidence in the case; that time was, therefore, absolutely necessary for defendant's attorney to have time to study the physical facts and surroundings on which the circumstantial evidence was based; that last, but not least, the coroner held an inquest and postmortem examination and there would, perhaps, be important expert testimony produced by the State, and should there be, it would be absolutely necessary for his attorney to acquaint himself with such

evidence, and with the medical science which treated of such matters, otherwise the result would likely be to effect a denial of justice when a man's life was at stake.

The usual allegations as to the exercise of due diligence, etc., were made.

The application was sustained by defendant's oath, and accompanied by an affidavit of defendant's attorney, declaring that he had been employed late on Saturday, September 1st, 1900, to defend the case, and that the pressure of other important business which he had on hand, and the intrinsic and difficult questions involved in the case, and the great research and investigation of authorities, made it, in his opinion, impossible to get ready and give the defendant a good defence, unless the case should be continued as prayed for.

It does not appear, from the record, that there was any bill of exceptions taken to the action of the court in overruling this motion, at the time it was overruled. No written reasons for such action were then given by the judge. The matter was made a subject of complaint in defendant's motion for a new trial, and a bill of exceptions was reserved to the overruling of that motion.

When jurors were tendered, he challenged a number for cause, and a number peremptorily. A number of challenges for cause were held not well founded. Defendant exhausted his peremptory challenges, and two talesmen, A. J. Pipes and J. C. A. McKinney, served upon the jury, the first named, A. J. Pipes, having been accepted over defendant's challenge to him for cause.

Defendant reserved bills of exception to the action of the court in overruling his challenges for cause. The grounds of challenge (with the exception to that of Pipes) were substantially alike, as were the reasons for holding the grounds of challenge insufficient.

In the bills of exception covering these complaints, defendant stated that in answer to question on *voir dire,* three jurors, who were white men, declared that they entertained a different feeling for a black man from that which they entertained for a white man; that, acting in a case in which there was a contest between a white man and a black man, he could not, and would not, give the black man the same legal, just and fair and impartial trial that he would give the white man; that he could not give a black man the same just, fair and impartial trial that he could give a white man charged with precisely the same

State vs. Mayfield.

crime; that they did state, however, when questioned by the judge, after they were challenged for cause, that in a case where the parties were all black, and no white person involved, interested, or concerned, that they could give a black man as fair a trial as they would a white man.

In the bills of exception, taken to the rulings, it is stated that by the ruling of the court, defendant was forced to challenge jurors peremptorily, and that by reason thereof, he had exhausted the right to challenge before the panel was complete.

The district judge assigned, as his reasons for accepting the jurors, that the defendant, a colored man, was being tried for the murder of a negro boy of four years; that counsel for defendant propounded to every juror sworn, questions in different forms seeking to know if they, as jurors, could give a negro a fair and impartial trial in contests where one of the parties was a negro; and if they could give a negro the same fair and legal trial they would a white man. Several of the jurors answered that they would be biased, they thought, in favor of the white man; some said they would not be able to give the colored man as fair and impartial a trial as they would the white man; but all of the jurors, in answering to questions by the court, declared that they had no bias nor prejudice against the defendant most emphatically and unqualifiedly; that they could and would give him a fair and impartial trial, and that they would depend entirely upon the law and the evidence in the case in making up their verdict; and where the State was a plaintiff, and the defendant a negro, they could be impartial and above bias.

That the court, feeling that the questions of counsel were not fully comprehended by the jurors, propounded to the jurors the questions in this form, to-wit: "Would you give a colored man, charged with a particular offence, the same impartial and legal trial that you would give a white man tried for the same offence?" Their invariable answer was that they could and would do so. That it was proper to state that while counsel examined all of the jurors as to their feelings towards a colored man and their ability to give such a man a fair trial, objection for that cause was only urged against the first two jurors sworn of those mentioned in the bill of exceptions, viz: Lewis and Griggs; the others were peremptorily challenged without first urging their answers on that point as an objection. That, as to

the particular juror mentioned in the bill, he stated, in answer to questions by the court, that he entertained neither bias nor prejudice against the defendant; that, if taken as a juror, he would give him a fair and impartial trial, and that he would depend entirely and wholly upon the law and the evidence adduced upon the trial for his verdict, and that, in this particular case, he would give the defendant a fair and impartial trial, and the court felt that the juror was competent.

In defendant's bill of exception No. 4, it is stated that after he had exhausted his peremptory challenges by reason of the court's having overruled some of his challenges for cause, as stated in the other bills, one Jack Pipes was called as a tales juror, from the spectators, and in answer to the questions propounded to him on *voir dire,* substantially said that he had talked with the coroner who made the *post-mortem* examination, and who held the inquest over the body of Sam Martin, the party whom the accused was charged with murdering, and with Dr. Kendall, the physician, who assisted the coroner, Dr. White, in making the autopsy, and, from talking with them, he had formed an opinion of the guilt or innocence of the accused, and that it would take strong evidence to remove this opinion. That the juror further declared that he entertained a different feeling towards the black man from that which he had for a white man; that, in a contest between a white man and a black man, he could not and would not give the black man the same just, legal, fair and impartial trial that he would give a white man.

That it was further shown on the trial, by the evidence of Dr. White and Dr. Kendall, the witnesses with whom the juror, Pipes, had talked and from whom he had gotten his opinion (both testified as experts), that the wounds inflicted on the child caused its death, and that the accused confessed to both that he had struck and kicked the child. That this necessarily showed that the opinion which the juror, Pipes, had formed, was that the accused was guilty of murder. That the said Pipes further stated that he knew Dr. White and Dr. Kendall to be truthful men, and that they would not tell anything that was not true. The accused challenged the juror for cause:

1st. Because he had formed an opinion from having talked with two of the principal witnesses whom he knew to be truthful men, and that it would take strong evidence to remove the opinion he had formed.

2nd. That the juror had said he entertained a different feeling for a black man; that he could not and would not give a black man the same just, fair, legal and impartial trial in a contest between a white man and a black man; that the court overruled the challenge, and that the accused, having exhausted his right of peremptory challenge, was forced to accept this juror.

The court gave as its reasons for overruling the challenge that the juror, Pipes, stated both to defendant's counsel and to the court that he had no fixed opinion; that his mind was in such a condition that he could go on the jury and depend entirely on the law and the evidence in arriving at his verdict; that he had no bias nor prejudice for or against the accused, and that he could disregard the opinion that he had, and such opinion would have no effect nor influence in determining his verdict in the cause; that, more than this, the juror was a man of high character, and the court believed he was answering truthfully. That the juror stated further that he had no bias or prejudice against the defendant; that in a contest between the State and a negro, he could and would give the negro a fair and impartial trial; that he would decide a case in which a negro was charged with a particular offence, as fairly as he would one in which a white man was charged with the same offence; and, further, that he could decide the case against this particular defendant fairly and impartially and without bias, and according to the law and the evidence. That these answers were made in answer to questions by the court.

Defendant filed a motion for new trial based on four grounds:

1st. Because his attorney had not had sufficient time in which to prepare his defence, there being very important expert evidence. That his counsel could not possibly prepare himself on this branch of the case in the short time allotted to him as a lawyer, he not being familiar with medical jurisprudence, and because he was overtaxed with other business.

2nd. Because of the overruling of the challenge for cause, especially that to the juror, Pipes. In this connection, it was averred that Pipes had declared in his answers on *voir dire* that he knew that the doctors with whom he had spoken (Doctors White and Kendall), were truthful men, and that their evidence, on the trial, would be just as their statements to him were. That the doctors had, on the trial, said that the wounds killed the child, and that the accused admitted to them that he

State vs. Mayfield.

did strike and kick the child; that this juror then, necessarily, went into the jury box under the belief that the accused was guilty.

3rd. Because the State had failed to make out its case. (Under this heading accused recited and discussed and criticized, adversely, certain portions of the State's evidence).

4th. Because the confession of the defendant was only that he struck and slightly kicked the child to make it rock the cradle; that they were very light blows and caused no injury. The judge, in refusing the motion for a new trial, stated that the court would not have been justified in delaying the trial for counsel for defendant to have studied or posted himself in medical science. That defendant had summoned two physicians to testify in his behalf as experts, and these physicians were in every respect equals of the other two summoned. He re-stated what he had before stated in reference to the juror, Pipes, and what his answers were on his examination on *voir dire*. Referring to the evidence in the case, he said there was other evidence adduced than that set forth in the third and fourth reasons urged for granting a new trial, and evidence sufficient, in his opinion, to justify the verdict.

## OPINION.

Objection to the action of the District Court in overruling the motion for a continuance should be preserved by an exception taken at the time of its occurrence, and not reserved to be set up in application for a new trial and then submitted to the Supreme Court, through a bill of exceptions, as to the refusal of the new trial as if made prior to the trial. The merits of an application for a new trial, based upon the fact of the absence at the trial of witnesses for the defence, or of the accused having to go to trial under disadvantageous conditions, for want of time to prepare the defense, if considered on appeal at all, will be considered from the standpoint of the whole situation as developed by the trial. The motion must be dealt with as an overruled motion for a new trial, and not as an overruled motion for a continuance. State vs. Wright, 45 Ann. 57; State vs. Hobgood, 45 Ann. 855; State vs. Barfield, 49 Ann. 1695.

We do not think that the acceptance by the court of the jurors challenged by the accused for cause, because of their acknowledgment "that acting as a juror in a case in which there was a contest between

a white man and a colored man, they could not and would not give the black man the same legal, just, fair and impartial trial they would the white man, that they would· be biased in favor of the white man," furnishes any good ground for reversal in a criminal case where the State is plaintiff and the defendant is a colored man charged with the murder of a colored boy, and the same jurors have declared that in a case where the parties were all black, and no white person was involved, interested, or concerned therein, they would give a black man as fair a trial as they would a white man; that in a case where the State was plaintiff and the defendant a negro, they would be impartial and above bias, and have further declared that they had no prejudice or bias against the defendant in the particular case then about to be tried.

Under the statements made and the conclusion reached by the district judge in respect to the juror, Pipes, the members of the court (the writer of this dissenting,) are of the opinion that he was properly accepted as a juror.

For the reasons assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.