(41 South. 793.)

No. 16,058.

STATE v. BUSH et al.

(June 4, 1906. Rehearing Denied June 27, 1906.)

1. CRIMINAL LAW—APPEAL—OBJECTIONS TO CHARGE.

Objections to the charge, not made before verdict, will not be considered on appeal.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 2022.]

2 INDICTMENT—MOTION TO QUASH.

Motion to quash on the ground of the incompetency of one of the grand jurors comes too late after plea.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Indictment and Information, § 473.]

3. GRAND JURY—DISQUALIFICATION OF JUROR.

Being charged with an offense not cognizable by the grand jury—for instance, the breach of a municipal ordinance—does not disqualify a grand juror.

4. JURY—COMPETENCY OF JUROR.

A juror who has declared that he thinks he is incompetent, because the deceased was his friend, but who, on being further questioned, says that, if sworn as a juror, he will try the case according to the law and the evidence, just as if he had not known the deceased, is competent. It is not for the juror to decide whether he is competent, but for the court.

[Ed. Note.—For cases in point, see vol. 31, Cent. Dig. Jury, §§ 437, 594.]

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

A. P. and Madden Bush were indicted for murder. A. P. Bush was found guilty, and appeals. Affirmed.

Elstner & Land, Lewell Colbert Butler, and Andrew Jackson Murff, for appellant. Walter Guion, Atty. Gen., and James Martin Foster, Dist. Atty. (Lewis Guion and Wise, Randolph & Randall, of counsel), for the State.

PROVOSTY, J. The defendant A. P. Bush was found guilty of murder without capital punishment.

He applied for a new trial, on the ground of error in the charge of the judge. In overruling the motion the judge said:

"The testimony in this was closed about 8 o'clock p. m., Tuesday, March 6th, and just before the court was adjourned at 10 o'clock a. m., Wednesday, counsel for the defendant requested that the court reduce its charge to the jury to writing, whereupon the court expressed acquiescence to said request and then and there requested said counsel to hand in any special instruction he desired to have incorporated in the charge of the court to the jury. Whereupon said counsel answered he had none to offer, but preferred to wait until he heard the charge of the court. Further, when, on the afternoon of Wednesday, March 7th, the court had given the jury the written charge as found in the record in this case, the court addressed the attorney in this case for the state, as well of those of the defendant, if they had any special instruction which they desired to be given, and after time to confer the attorneys on both sides answered in the negative, and no objection to the charge as given by the court was made known, and no exception taken, whereupon the jury retired to consider its verdict, and after due consideration returned a verdict, before adjournment on the afternoon of Wednesday, March 7th, whereupon, after having the jury polled and its unanimity ascertained, the jury was discharged, and the court adjourned. And no objection to the charge of the jury being made known to the court until counsel for defendant presented a motion for new trial at motion hour on the morning of March 10th, the court overruled said motion as coming too late, and for the further reason that no injury to the accused was done, and, further, that the legal doctrine set forth in the charge objected to in the motion for new trial, though urged by the attorneys for the state in their argument before the jury, was not replied to or dissented from by counsel for defendant in argument."

Under the above circumstances, the question now presented is whether, not having made any objection to the charge of the judge when thus required to make known any he might have, the defendant was still in time to urge the objections on new trial, or can be permitted to urge them in this court. We think not.

The well-nigh universally accepted rule, both in civil and criminal cases, is that objections to the charge of the court will not be considered on appeal unless made before verdict. 2 Cyc. 700, 1046; Ency. P. & P. Vol. 8, p. 253; 12 Cyc. 666, 667; State v. Mc-

Clanahan, 9 La. Ann. 210; State v. Chopin 10 La. Ann. 458.

In the case of State v. Ricks, 32 La. Ann. 1098, this court made a departure from that rule, and held that, where the charge had been written and was in the record, any errors therein would be reviewed. Shortly afterwards, however, when the case was invoked as authority, in State v. Beaird, 34 La. Ann. 104, before the same judges, the court referred to it in the following terms:

"Although in writing, the judge's charge was not excepted to. We held in State v. Ricks, 32 La. Ann. 1098, that, where the charge was in writing and embodied in the record, we would notice errors, under proper assignment thereof, although not presented by bill of exceptions. While not now overruling this opinion, which, however, is contrary to prior authority (State v. Chopin, 10 La. Ann. 458), and therefore to be strictly construed, we deem it proper to say that it is in every way preferable that charges should be excepted to when given, in order that the judge may have an opportunity of explaining or correcting his charge at the time; otherwise, the defendant would be at liberty to take his chances of acquittal on the charge as delivered, and, if convicted, to urge his objection in subsequent proceedings.

"Only in case of gross and unambiguous error will we sustain objections to the charge not made and presented by bill of exceptions at time of delivery."

And about the same time in another case (State v. Curtis, 34 La. Ann. 1214) the same judges said:

"In a case of Ricks, 32 La. Ann. 1098, which he quotes, it appeared that the obnoxious charge had been given to the jury 'in writing and was embodied in the record,' which is not the case here. That decision had been subsequently reviewed by us, and has been considerably modified in the Case of Beaird et al., 34 La. Ann. 106, where we showed the danger of abuse in allowing the accused to complain on appeal of a charge, even in writing, to which he had not objected or excepted when it was given, by which course he 'would be at liberty to take his chances of acquittal on the charge as delivered, and, if convicted, to urge his objections in subsequent proceedings.' And without absolutely overruling the previous opinion we laid down the following rule: 'Only in cases of gross and unambiguous error will we sustain objections to the charge not made and presented by bill of exceptions at time of delivery.'"

It would seem to be plain that the authors of the Ricks decision refrained from absolutely overruling it simply because the necessity of doing so could be avoided by deciding the case on other grounds and because a court is always reluctant to overrule itself.

One year thereafter, in the case of State v. Sheard & Smith, 35 La. Ann. 543, the same judges said:

"This charge, when given, was not objected to in the court below, no bill of exceptions was taken to it, and from aught that appears in the record there is nothing to show that it was not fully acquiesced in by the accused when delivered, and the first complaint heard of it is in this court, in the counsel's argument."

The court referred to the Ricks Case, and underscored the qualifiers "gross and unambiguous" in the sentence:

"Only in cases of gross and unambiguous error will we sustain objections to the charge not made and presented by bill of exceptions at time of delivery."

Justice Levy, who had been the organ of the court in the Ricks decision, was succeeded on the bench by Justice Manning, a recognized authority in criminal law, and the latter, at the first opportunity, expressed himself, speaking for the court, in the case of State v. Riculfi, 35 La. Ann. 770, as follows:

"The errors assigned are alleged misdirections of the court in its charge to the jury, a mode of presenting such matters for review so unusual, and so contrary to established practice, that the prisoners' counsel have found it necessary to offer an explanation to excuse it, in the circumstance that the charge was delivered late at night. They asserted, however, that their right to submit these matters for review under that form 'rests upon repeated adjudications of this court.' Eight cases are cited as sustaining this assertion, one of them being a civil cause, and, of course, wholly out of the domain of the subject, and not one of the others, with a single exception, sustaining or countenancing the practice. That exception in State v. Ricks, 32 La. Ann. 1098, which was qualified on the first opportunity the court had to intimate its correctness (State v. Beaird, 34 La. Ann. 104), and which is, as there admitted, contrary to authority, and again in State v. Curtis (not yet officially published) 41 South. 58, and may now be considered as overruled.

"The reason why this practice is not permitted is obvious. By it the judge had no opportunity to explain his charge—none to state that, as given, it was pertinent to the facts of the case, and that a fuller charge was not

demanded by the circumstances attending the commission of the act for which the defendant is prosecuted. Bills of exceptions should have been taken to those parts of the judge's charge which were deemed to be wrong, which will always bring them up with the judge's reasons, and such facts as are necessary to show how the law was applied. They cannot be examined on an assignment of errors. Even a bill of exception, taken to the charge as a whole, is not allowed. State v. Chopin, 10 La. Ann. 458. An assignment of errors in criminal practice is for another purpose than correction of the charge of the court."

The case was one of murder, in which a verdict without capital punishment had been found, and the judgment was affirmed. The Ricks Case was expressly overruled.

So, likewise, the case of State v. Bird, 38 La. Ann. 497, was a case of murder without capital punishment. In it, after referring to the cases hereinabove mentioned, the court said:

"The correctness of the assumed misdirections of the judge in his charge to the jury cannot be heard and determined by way of motion for new trial."

In State v. Ferguson, 37 La. Ann. 51, a case of conviction for manslaughter on a charge of murder, the court said:

"Such a course illustrates, more forcibly than any reasoning which we could adopt, the wisdom of the now settled rule that an assignment of errors is not the legal mode of inviting review by an appellate court of alleged errors in the charge of the trial judge.

"The special charge which is urged to be erroneous must be objected to at the time that it is given, or the complaint cannot be heeded. The charge of the judge must not be confounded with a thesis on criminal law, to which hypercritical reversion is invited by counsel of the party convicted. The law contemplates it as a synopsis of the principles which should control the trial, and jurisprudence has established the rule that by a timely objection the accused may secure the correction of any unguarded or erroneous utterance, or an explanation of any doubtful expression which may have occurred in the judge's instructions. And this court has more than once emphatically declared that it will not tolerate the vicious practice under which the accused would take his chances of an acquittal under a charge not objected to at the time, and, if convicted, to escape from the verdict by subsequently alleging errors in the identical charge which had gone without objection. State v. Beaird, 34 La. Ann. 106; State v.

Curtis, 34 La. Ann. 1213; State v. Riculfi, 35 La. Ann. 774."

In State v. Melton, 37 La. Ann. 77, where the sentence of death had been imposed, and where a bill of exception had been taken "to the entire charge of the court," and an assignment of errors had been filed, and where the charge had been in writing, the court refused to consider the objection, citing the Cases of Riculfi and Ferguson.

Thus the doctrine of the Case of Ricks was thoroughly and emphatically repudiated.

In the case of State v. Mack, 45 La. Ann. 1155, 14 South. 141, the court said:

"The third ground, leveled at a sentence in the judge's charge, was set up for the first time after verdict. This court has repeatedly declared it to be the duty of the accused, at the time a charge is made, to make known any objections he might have, to the end that the judge's notice may be drawn to them and enable him to either strike out, modify, or enlarge the instructions."

The court went on, however, and added that it had examined the errors complained of and not found them " gross and unambiguous."

Thereby the court appeared to reinstate, in a measure, the doctrine of the Ricks Case, which had been repudiated in the Cases of Riculfi, Bird, Ferguson, and Melton.

In State v. Jones, 46 La. Ann. 1395, 16 South. 369, a case in which the death penalty had been imposed, the court set aside the verdict because of the refusal to give a special charge, although no bill of exception had been reserved. And in State v. Thomas, 50 La. Ann. 148, 23 South. 250, a case in which the death penalty had been imposed, the court set aside the verdict because of an erroneous charge, although no objection had been made below. In these cases, however, the rule by which the charge to the jury cannot be reviewed unless objected to before verdict does not seem to have attracted the attention of the court. It is not only not discussed, but not even alluded to, and the Cases of

Bird, Riculfi, Ferguson, Melton, and Mack are not referred to.

In the case of State v. Wright, 104 La. 44, 28 South. 909, the court refused to entertain an objection that had not been urged below, and cited the Cases of Bird and Riculfi, but added that a different rule prevailed in capital cases, and cited the Cases of Jones and Thomas, supra, as well as other cases; but these other cases we have found not to be in point, and it is not apparent why they were cited. The court does not seem to have observed that the Case of Riculfi had been a capital case, and does not seem to have had its attention attracted to the Case of Melton, which had also been a capital case, nor to the Case of Ferguson.

In State v. Procella, 105 La. 518, 29 South. 967, a case of manslaughter, the court said:

"There is no bill of exception to the charge nor assignment of errors in the record. Under these circumstances no alleged error can be considered, unless the charge appears, upon its face, to be glaringly unjust and erroneous"—citing the Cases of Beaird, Curtis, Ferguson, Melton, and Mack.

In the case of State v. West, 105 La. 639, 30 South. 119, a case of horse stealing, the court formulated the rule as in the Cases of Beaird and Curtis; that is to say, that objections to the charge not made before verdict would not be noticed, except in cases of gross and unambiguous error. The court made no reference to the Cases of Beaird, Riculfi, Ferguson, Melton, and Wright.

Recapitulating the foregoing, we find that the generally accepted rule is that objections not made before verdict cannot be listened to on appeal; that this rule had been adopted in this state by the cases of State v. McClanahan, 9 La. Ann. 210, and State v. Chopin, 10 La. Ann. 458, and had stood for many years, when by the case of State v. Ricks, 32 La. Ann. 1098, it was overthrown; that the authors of that decision almost immediately recognized that they had made a mistake, and in the Cases of Beaird (34 La. Ann. 106) and

Curtis (34 La. Ann. 1214) sought to hedge by declaring that such untimely objections would be noticed only where the error was "gross and unambiguous;" that soon thereafter, Justice Manning having succeeded Justice Levy on the bench, the court, in the case of State v. Riculfi, 35 La. Ann. 770, overruled the Ricks decision root and branch; that the re-established rule was rigidly applied in the cases of Bird (38 La. Ann. 497), Ferguson (37 La. Ann. 51), Melton (37 La. Ann. 77), and Mack (45 La. Ann. 1155, 14 South. 141), and seemed to be well and firmly settled; that in this last-mentioned case the court, after holding that the objections could not be considered, went on and added that the court had nevertheless examined the errors complained of, and found them not to have been gross and unambiguous; that this purely casual remark seems to have opened a door through which the doctrine of the Ricks Case, as sought to be muzzled in the Beaird and Curtis Cases, has crept back into our jurisprudence, without making any noise—that is to say, without discussion; that the Cases of Jones and Thomas, in which this was done, were shortly followed by the Case of Wright, in which the rule was again held to be in full force, but not to have sway in capital cases; that in the Cases of Procella and West the court ignored the distinction thus sought to be established in the Wright Case, and, again without discussion, went back to the doctrine that gross and unambiguous errors would be examined, though not objected to before verdict.

It must be admitted that the state of our jurisprudence on this point is unsatisfactory. A rule of almost universal jurisprudence, and that had long prevailed in this state, was overthrown without discussion, and was, within a very short time, re-established after thorough discussion and giving of reasons, and adhered to in a series of cases involving life and liberty, and then, again without discussion, was put aside. The cause of this

vacillation is not far to find. The rule in question is one of those which operate with great harshness in certain cases, and the temptation to bend it becomes overstrong. But when some case comes up wherein its wisdom is again made manifest, as in the case we are now dealing with, it is dug up and again brought into service.

The charge of the court in this case bears upon its face evidence of having been prepared with due care, and there can be no doubt that it was prepared with the sole view of stating the law correctly. The learned judge a quo, in a spirit of perfect fairness, requested counsel to submit to him any special charges they might wish him to give, and after delivering the charge asked counsel if they had any objection to it, and counsel answered they had none.

Under these circumstances, the alternatives presented are that the error complained of was not sufficiently marked to attract the attention of counsel, or else that counsel noticed it, but thought they would take advantage of it by letting the jury render a verdict which would be valid if in favor of their client, but invalid if in favor of the state. If the alleged error failed to attract the attention of counsel, the reason must be that it was not "gross and unambiguous," and, if so, it is not reviewable, even under the rule of the Beaird and Curtis Cases. On the other hand, if it attracted the attention of counsel, and they deliberately abstained from having it corrected, they must be considered either as having waived it, or as having designed to play fast and loose with the court, a thing they could not be permitted to do. Counsel say it was the duty of the court to charge the jury correctly, and that by interposing they would have prejudiced their case before the jury. True, the judge must charge the law correctly, but he is human, and therefore fallible; and it is recognition of this that the law requires that in every case the accused shall be represented by counsel, whose imperative duty it shall be

to call the judge's attention to any error he may have made in his charge, to the end that the same may be corrected, and the jury rightly instructed. So far as prejudicing the case is concerned, the theory of the law is that harm cannot be done to the case of the accused by having the court correct an error prejudicial to him in its charge.

The distinction sought to be established in the Wright Case between capital cases and cases not capital is one not sanctioned by our jurisprudence; nor, so far as our investigation has gone, by any decision elsewhere, excepting, possibly, in the one case of People v. Leonardi, 143 N. Y. 360, 38 N. E. 372, cited in 8 E. of P. & P. p. 257, note. It is a distinction that could not be justified on principle, but, at best, only by policy or expediency, and a doubtful expediency at that; for liberty is as precious as life in the eye of the law, and, if all share the celebrated sentiment of Patrick Henry, "Give me liberty or give me death," is likewise so in fact.

No better founded in principle, and to the same extent of doubtful expediency, is the distinction sought to be made between gross and unambiguous error and error not of that character. If the error, though gross and unambiguous, has been harmless, it is for that reason not reviewable. If, on the other hand, though not gross and unambiguous, yet it has brought about a conviction not sanctioned by the law of the land, it has done all the harm that the grossest and most unambiguous error might have done, and should nullify the verdict. If slight, and yet fatal, the accused may say of it what Mercutio said of his wound:

"'Tis not so deep as a well, nor so wide as a church door; but 'tis enough, 'twill serve. Ask for me to-morrow, and you will find me a grave man."

The error in the instant case, if error there was, was not so gross or unambiguous as not to have eluded the notice of the judge a quo, a lawyer of large experience and recognized erudition and ability, and yet, if counsel for defendant are to be believed, has led to the

unjust and illegal condemnation of defendant just as effectually as the grossest and most unambiguous error might have done.

Again, where is to be found the line of demarkation between gross and unambiguous error and error not of that character? Is the court to trace the line in each case for the particular case? Is that line to wave back and forth as the spirit of the moment may move this court? Is this court to be a law unto itself in determining whether a particular error is to fall on this or that side of this fanciful or arbitrary line? On which side of the line, for instance, would the matter impugned as error in the instant case be assignable? The learned counsel for defendant, backing themselves with authority, say on one side. The learned counsel for the state are clear to the contrary. In all reason, this court should be content with the difficult task of determining whether particular legal propositions are, or not, erroneous, without undertaking the incomparably more difficult, if not impossible, task of assigning degrees to particular errors. What stands out perfectly plain, manifest, and certain to one mind may prove occult, vague, and doubtful to another mind. It is a matter of everyday experience that judges will hold opposite sides of a legal proposition, and both insist that their side is plainly right, and the other side plainly, if not absurdly, wrong.

Concluding that the error in question is not presented in such shape as to be reviewable, it becomes unnecessary to waste time with a statement of it.

The next contention of defendant is that counsel for the state in their closing argument made remarks which were improper, and were prejudicial to defendant. The following is the remark in question:

"Suppose a schoolgirl was returning to her home along some unfrequented street or highway, and was assaulted by a drunken brute; could he be heard, on his trial, to urge his drunkenness as an excuse or palliation of his crime?"

To understand defendant's objection to this remark, it is necessary to know that, shortly before, a drunken negro named Coleman had outraged and murdered a young girl on the outskirts of the city of Shreveport as she was returning home from school, and that this had aroused the indignation and resentment of the people of Shreveport to such a pitch that, to prevent a lynching, state troops from other parts of the state had had to be sent to Shreveport and kept there until the negro had been tried, convicted, and executed. The contention is that the hypothetical case thus stated by counsel for the prosecution was a transparent allusion to the Coleman Case, and was well calculated to prejudice the jury against the accused.

The learned judge says:

"In the argument of this case Mr. M. C. Elstner, of counsel for the accused, very strenuously urged the intoxication of the accused as an extenuation of the homicide; and when W. S. Wise, of counsel for the state, was making the closing argument, he, in combatting the argument of Mr. Elstner, stated a hypothetical case by way of illustration of the error of Mr. Elstner's contention, in these words, to wit: 'Suppose a schoolgirl was returning to her home along some unfrequented street or highway and was assaulted and murdered by a drunken brute; could he be heard, on his trial, to urge his drunkenness as an excuse or palliation of his crime?'

"Whereupon Mr. A. J. Murff, of counsel for the accused, about the time Mr. Wise was concluding the statement of his hypothetical case, without rising from his seat, stated that he excepted to the remarks of Mr. Wise; but he did not call on the court to stop or reprimand him, nor request the court to charge the jury to disregard said objectionable remarks.

"Further, the court will say that while the hypothetical case stated by counsel for the state, in some of its outlines, recalled the Coleman Case, referred to in bill of exceptions, it was so wanting in those features of the Coleman Case, that had so recently stirred the people of Caddo Parish to summary vengeance, that the court failed to appreciate the impropriety of the illustration, or that any injury could be done to defendant or any prejudice aroused against him."

To which the judge here says the counsel for the state add that in urging this plea of drunkenness counsel for defendant had called

into requisition all the resources of eloquence, and evidently with telling effect, and that for undoing their work, and putting things in their true light, it became necessary for counsel for the state to show the jury how this specious doctrine of drunkenness being an excuse for crime would work in practice, and that the hypothetical case stated did no more than this.

Be this as it may, we do not find that counsel transcended the bounds of legitimate argument. The illustration, although perhaps a vivid, or even a lurid, one, was nothing more than an illustration, a loyal weapon of forensic warfare. Those elements of the Coleman Case which appealed to prejudice had no application to, and as a consequence could have no play or effect in, the case of defendant, who is a white man and was not charged with rape. The illustration was used, not to enforce the idea that drunkenness is an aggravation of the crime, but simply that it is not an extenuation of it.

Defendant's other contentions are submitted in the brief without argument. They have no merit, and shall be disposed of summarily.

The motion to quash was filed after plea, and was based upon the alleged incompetency of one of the grand jurors, resulting from his having been charged with the violation of one of the sanitary ordinances of the city of Shreveport punishable by fine not exceeding $50. After plea, the motion came too late. State v. McGee, 36 La. Ann. 206; 12 Cyc. 357; E. of P. & P. vol. 2, p. 775; A. & E. E. (1st Ed.) vol. 4. p. 762. Moreover, the breach of a municipal ordinance is an offense not cognizable by the grand jury, and the crime and offense whereof the charge disqualifies a grand juror are those cognizable by the grand jury.

The challenge of the juror Hodges is based upon his having said that he did not think he should make a competent juror, as he had been a friend of the deceased. But the juror, when further questioned, said that, if sworn as a juror, he would try the case according to the law and the evidence, just as if he had never known the deceased. He was therefore qualified. State v. Garig, 43 La. Ann. 365, 8 South. 934; State v. Williams, 49 La. Ann. 1152, 22 South. 759; State v. Mayfield, 104 La. 173, 28 South. 997; State v. Hebert, 104 La. 227, 28 South. 898. It is not for the juror to decide whether he is a competent juror or not, but for the court.

Judgment affirmed.

BREAUX, C. J., and NICHOLLS, J., concur in the decree. LAND, J., takes no part, not having heard the argument.